In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-3812

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THOMAS JOHNSON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 785—**David H. Coar**, *Judge.*

_____

ARGUED FEBRUARY 22, 2008—DECIDED JULY 18, 2008

_____

Before EASTERBROOK, *Chief Judge*, and BAUER and POSNER, *Circuit Judges*.

BAUER, *Circuit Judge*. For a third time, Thomas Johnson requests that we review his sentence. In 2000, a jury convicted Thomas Johnson of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and two counts of producing fraudulent Social Security cards in violation of 18 U.S.C. §§ 1028(a)(1) and (2). The district court sentenced Johnson to 60 months' imprisonment on Count 1 and 78 months' imprisonment on Counts 2 and 3, to run concurrently. On Johnson's first appeal, we remanded the case for resentencing, finding that the dis-

trict court had used the incorrect definition of "relevant conduct" under U.S.S.G. § 1B1.3(a)(2)) in reaching Johnson's sentence. *See United States v. Johnson*, 347 F.3d 635, 638-40 (7th Cir. 2003). After applying the correct definition of "relevant conduct" on remand, Judge Coar imposed the same sentence. On Johnson's second appeal, we ordered a limited remand so that Judge Coar could inform us whether he considered the sentence to be appropriate, given that the Sentencing Guidelines are no longer mandatory. *See United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *United States v. Paladino*, 401 F.3d 471, 483-85 (7th Cir. 2005). Judge Coar answered in the affirmative, and Johnson appeals.

## I. BACKGROUND

Pursuant to our limited *Paladino* remand, on August 24, 2005, Judge Coar held an initial status hearing to set briefing deadlines and discuss representation issues.[1] Johnson's attorney from his second appeal and a federal public defender were present. The following colloquy took place:

> The Court: So, Mr. Johnson, is it your wish that [your current attorney] not represent you?

---

[1] Johnson's representation issues dated back to August of 2000, when Johnson was unhappy with his trial attorney and requested a new one. Johnson was represented by another attorney on his second appeal. On May 11, 2004, Judge Coar granted that attorney's motion to withdraw, and appointed a public defender to represent Johnson on his second appeal. That public defender moved to withdraw on June 15, 2005, which brings us to the events on August 24, 2005.

Johnson:     That's absolutely correct.

The Court: All right. And [the public defender] is appointed to represent you—

Johnson:     No, I don't want Mr.—I don't need representation.

The Court: You don't have a choice.

Johnson:     I do have a choice. I don't have to have him represent me.

The Court: You want to represent yourself?

Johnson:     Yes, absolutely.

The Court: Yes sir. You can represent yourself.

Johnson proceeded *pro se* during the following months. On October 5, 2005, Judge Coar appointed stand-by counsel to assist Johnson. On July 11, 2006, Johnson filed a sentencing memorandum, arguing that *Booker* was unconstitutional because it imposed *ex post facto* punishment, and therefore Judge Coar was entitled only to sentence Johnson under the mandatory Guidelines. Johnson also argued that his sentence of 78 months was greater than necessary under the 18 U.S.C. § 3553(a) factors, due to his admission of guilt, his employment history (in the marketing and sales industry), and his health. The Pre-Sentencing Report confirmed Johnson's employment experience, and detailed his educational background (master's degree in finance and economics) and criminal history that spanned over four decades.

Johnson's third resentencing hearing took place on July 12, 2006. By that time, Johnson had been incarcerated since October of 1999, and had already served over

80 months in prison.[2] Judge Coar construed Johnson's arguments as objections to the PSR's findings as well as its prior Guidelines calculations, and he overruled both. Then, "in a nonmandatory regime consistent with *Booker*," he sentenced Johnson to 60 months on Count 1 and 80 months on Count 2 and 3, all to run concurrently.

## II. DISCUSSION

### A. Right to Counsel

The first issue is whether Johnson waived his Sixth Amendment right to counsel. Johnson argues that Judge Coar failed to conduct the appropriate colloquy before he proceeded *pro se*, and therefore without the court's warnings about the dangers of representing himself, Johnson's decision to forego counsel could not have been knowing and intelligent. Johnson requests that he be resentenced, arguing that if he receives a lesser sentence, he would receive credit for time served toward his current sentence for his February 2004 conviction.

"[T]he Sixth Amendment guarantees the right to counsel at all critical stages of the prosecution," and this right is applicable during sentencing hearings. *United States v. Irorere*, 228 F.3d 816, 826 (7th Cir. 2000) (internal citations omitted). A criminal defendant may waive his right of assistance to counsel and proceed *pro se*, so long as he does so knowingly and intelligently. *Faretta v.*

---

[2] Due to a conviction in a separate case for bank fraud in February of 2004, Johnson's release was not imminent because his sentence for the latter case (78 months) was to run consecutive to his sentence for his 2000 convictions.

*California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Hoskins*, 243 F.3d 407, 410 (7th Cir. 2001). A defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *United States v. Avery*, 208 F.3d 597, 601 (7th Cir. 2000) (citing *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525).

We review a defendant's waiver of his right to counsel for an abuse of discretion, inquiring whether the record as a whole demonstrates that the defendant knowingly and intentionally waived his right to counsel. *Avery*, 208 F.3d at 601. To determine whether a defendant's decision to proceed *pro se* was knowing and informed, we consider four factors: "(1) whether and to what extent the district court conducted a formal hearing into the defendant's decision to represent himself; (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation; (3) the background and experience of the defendant; and (4) the context of the defendant's decision to waive his right to counsel." *United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008).

First, we consider whether Judge Coar made a formal inquiry into Johnson's decision to proceed *pro se*. While we reject the rigidity implicit in a formal inquiry, the inquiry must be sufficient to indicate that a defendant understands the dangers involved in self-representation. *United States v. Bell*, 901 F.2d 574, 576-77 (7th Cir. 1990). We find the exchange between Judge Coar and Johnson was less than adequate, where the court merely confirmed Johnson's request to proceed *pro se*. The court should have cautioned Johnson of the risks and dangers

associated with self-representation. *See United States v. Todd*, 424 F.3d 525, 531 (7th Cir. 2005) ("[T]he court must impress upon the defendant the disadvantages of self-representation."). The district court's failure to conduct an adequate inquiry weighs against a finding of a knowing and intelligent waiver.

While the district court failed to sufficiently inform Johnson of the dangers of self-representation, "failure to conduct a full inquiry is not fatal, for the ultimate question is not what was said or not said to the defendant but rather whether he in fact made a knowing and informed waiver of counsel." *Todd*, 424 F.3d at 531 (citation and internal quotations omitted). Other evidence in the record, along with Johnson's background and experience, establish that Johnson understood the dangers of self-representation and made an intelligent waiver. A defendant need not have the experience of a lawyer in order to intelligently choose to represent himself, *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525; rather we examine the background and experience of the defendant merely to gauge whether he appreciated the gravity of his waiver. *United States v. England*, 507 F.3d 581, 587 (7th Cir. 2007). We consider a defendant's educational achievements and prior experience with the legal system. *United States v. Sandles*, 23 F.3d 1121, 1128 (7th Cir. 1994).

Johnson acknowledged that he understood the charges against him and the maximum penalties they carried at his October 26, 1999 preliminary hearing. *See Todd*, 424 F.3d at 533. Johnson has a master's degree in finance and economics, and an extensive history of arrests and convictions over the last forty years. While the record is unclear (and the parties dispute) whether or not Johnson represented himself in a prior criminal proceeding,

we believe that, due to his extensive criminal history, he nonetheless understood the serious nature of the charges against him. *See Todd*, 424 F.3d at 533 (holding that despite lack of evidence that the defendant represented himself in his prior criminal proceedings, his prior experience with the judicial system tends to show that he understood that the charge against him was serious and that he was accepting a risk by representing himself). There is no evidence that Johnson believed he was at a disadvantage representing himself.

We also consider the context of Johnson's decision to proceed *pro se*. A waiver is likely knowing and voluntary if the defendant gave it for strategic reasons or after repeatedly rejecting the assistance of counsel. *United States v. Egwaoje*, 335 F.3d 579, 586 (7th Cir. 2003). Throughout his trial, two sentencing hearings, and two appeals, Johnson was represented by three different attorneys, all of whom withdrew either at Johnson's request or of their own accord. Judge Coar offered to appoint a federal defender to represent Johnson for his third sentencing hearing, but he emphatically declined the offer, stating that he did not need representation, and that it was his "choice" and that he "absolutely" wanted to represent himself. *See Todd*, 424 F.3d at 533 (finding a defendant waived his right to counsel for strategic reasons when he stated on the record that he did not trust his court-appointed attorneys). Further, Judge Coar was in a better position to evaluate Johnson's motives than we are, as he witnessed Johnson's representation issues throughout the various proceedings. *See United States v. Best*, 426 F.3d 937, 944 (7th Cir. 2005) ("The judge's conclusion that [the defendant] had knowingly and intelligently opted for the lesser of two evils—self-representation

as opposed to the lawyers he so disliked— was a reasonable one."). Evaluating this record as a whole, we conclude that Johnson's waiver of his right to counsel was knowing and intelligent.

### B. Sentencing

Johnson also argues that Judge Coar failed to consider the factors under 18 U.S.C. § 3553(a), because he did not specifically refer to those factors when he imposed Johnson's sentence. Johnson misstates the proper standard of review, arguing that we should review his sentence under a "reasonableness" standard. We review procedural errors, such as whether the district court followed proper post-*Booker* sentencing procedures, under a non-deferential standard of review. *United States v. Rodriguez-Alvarez*, 425 F.3d 1041, 1046 (7th Cir. 2005). It is true that Judge Coar did not make definite findings as to each of the § 3553(a) factors, and that more explanation on the record is always better than less; however a district court judge need not apply all § 3553(a) factors in a systematic or "checklist fashion." *Alden*, 527 F.3d at 662. We find Judge Coar's explanation to be sufficient, considering the sentence he imposed was well within the Guidelines. *See United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005) ("Judges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.") (citation omitted).

In addition, on a limited *Paladino* remand, a judge need not employ a full-fledged methodology for measuring the reasonableness of the Guidelines sentence against

§ 3553(a). *United States v. Spano*, 447 F.3d 517, 519 (7th Cir. 2006). Judge Coar was familiar with Johnson and his case, sentencing him for a third time in six years. The record reveals that Judge Coar gave Johnson plenty of opportunity to "draw [his] attention to any factor listed in § 3553(a) that might warrant a sentence different from the guidelines sentence." *Rodriguez-Alvarez*, 425 F.3d at 1046 (citing *Dean*, 414 F.3d at 730). Johnson had the opportunity to object to the PSR's findings (which he did), submit his sentencing memo, and present arguments at the final sentencing hearing. Judge Coar reviewed Johnson's sentencing memorandum—in which Johnson argued that *Booker* violates the *ex post facto* clause by exposing a defendant to a longer maximum sentence—and addressed the factors set forth in § 3553(a), such as his forty-year criminal history that involved only two violent offenses, his long employment history in marketing and finance, his age, and his failing physical health. Judge Coar heard arguments from the government on many § 3553(a) factors, including the nature of Johnson's financial crimes, his criminal history, and the need to protect the public from potential crimes by Johnson in the future. We are unconvinced that Johnson made any novel arguments the third time around.

Johnson also spoke at his sentencing hearing, addressing only his *Booker* argument, which was promptly and accurately rejected by Judge Coar. *See United States v. Swanson*, 483 F.3d 509, 516 (7th Cir. 2007) (rejecting the same *ex post facto* argument); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005) (same). Judge Coar then asked Johnson if he was finished, and Johnson replied "Yes, sir." When a judge is not presented with much, he need not explain much. *Spano*, 447 F.3d at 519 ("[T]he need for a judge to explain in detail his consideration of

the § 3553(a) factors when choosing to stick with the Guidelines sentence is proportional to the arguments made by the defendant[].”). Judge Coar's explanation was sufficient for purposes of the limited *Paladino* remand and proportionate to the arguments that Johnson raised.

Johnson also fails to persuade us that his sentence is unreasonable. A sentence within the Guidelines is presumptively reasonable, *Rita v. United States*, ___ U.S. ___, 127 S.Ct. 2456, 2462, 168 L.Ed.2d 203 (2007); *United States v. Bustamente*, 493 F.3d 879, 891 (7th Cir. 2007), and a defendant must rebut the presumption by demonstrating that his sentence is unreasonable when measured against the factors set forth in § 3553(a). *United States v. Brock*, 433 F.3d 931, 938 (7th Cir. 2006). Johnson's only argument is that Judge Coar's sentence was unreasonable due to his serious health issues and “consequences of incarceration.” Given his extensive criminal history and blatant disregard for the law, we would be hard-pressed to say that Judge Coar was unreasonable to believe a sentence of 80 months was necessary to deter him from future crimes and to protect the public.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Johnson's sentence.

---