NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 15, 2009
Decided November 17, 2009

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 08-2547

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 1:04-cr-00885-1 |
| VICTOR R. POWELL, | |
| *Defendant-Appellant*. | Blanche M. Manning, *Judge*. |

**O R D E R**

Victor Powell pleaded guilty to transporting a minor across state lines for the purpose of prostitution. *See* 18 U.S.C. § 2423(a). He was represented by counsel at the time of his guilty plea but appeared pro se at sentencing. Now, with the assistance of the federal public defender, Mr. Powell argues that his waiver of counsel at sentencing was involuntary and that he therefore must be resentenced. For the reasons set forth in this order, we affirm the judgment of the district court.

**I**

## BACKGROUND

Law-enforcement officials began investigating Mr. Powell in 2004 after they received a phone call from an 18-year-old woman who said she was involved in an abusive situation. Investigators learned that Mr. Powell had abducted the caller and forced her into prostitution and that he had done the same with three other minor females.

On May 8, 2007, one month before the date scheduled for sentencing, Mr. Powell's retained attorney moved to withdraw, citing irreconcilable differences. The district court permitted counsel to withdraw and postponed the sentencing hearing. Over the next year, the court conducted ten status hearings concerning Mr. Powell's representation. During that time, Mr. Powell turned away two different attorneys willing to represent him by appointment, and he tried to dispense with a third attorney appointed by the court to appear as standby counsel. Mr. Powell refused to accept any attorney who was not willing to represent him in his "private capacity," which he explained to mean "[a]s a third party intervenor and secured party creditor in this matter in title over the property." R.213 at 3. Mr. Powell elaborated that he was not the person charged in the indictment: "I am Victor Powell," he told the court at one point, "but that name on the charging instrument in all capital letters is a corporate fiction in law or a deceased person." *Id*. In support of his position, Mr. Powell flooded the record with irrelevant documents, including what he characterized as a Uniform Commercial Code financing statement, a hold-harmless indemnity agreement and a common-law copyright.

After the district court had permitted Mr. Powell's retained attorney to withdraw, the court conducted the first of the ten status hearings on June 19, 2007. At that hearing, the court said that it would appoint a private attorney from the list of attorneys who were qualified and willing to accept appointments under the Criminal Justice Act. At the second status hearing on July 10, the court learned that Mr. Powell had refused to sign the requisite financial affidavit because, he claimed, the attorney would not agree to represent him in his "private capacity." *Id*. The district court explained to Mr. Powell that he was a criminal defendant and that his theories about corporate status had no relevance to the proceedings.

Although Mr. Powell was given additional time to reconsider his position, he refused to appear at the next status hearing on August 16, 2007. When Mr. Powell finally appeared on August 28, he told the court that he did not "wish to proceed pro se," and did not "have any license to represent any corporate fiction in this or any courtroom." R.215 at 4. After the court warned Mr. Powell that his position was not valid and that his case would proceed to sentencing, Mr. Powell changed course and asked to be referred to a public defender. Mr. Powell initially refused, however, to meet with the assistant public defender. When they finally did speak at the fifth status hearing on October 5, 2007, Mr.

Powell was uncooperative: the district court therefore released the assistant public defender from any further obligation to represent Mr. Powell. Additionally, in view of Mr. Powell's behavior, the court ordered that he be evaluated to assure that he was competent to be sentenced.

At the sixth status hearing on October 19, 2007, just two weeks after rejecting appointment of the federal public defender, Mr. Powell announced again that he wished to be represented at sentencing but only in his "private capacity." R.217 at 6. The district court once more reminded Mr. Powell that he was a criminal defendant and urged him to accept an attorney: "I think it would be a wise decision for you to accept a lawyer to represent you. As you point out . . . you're not trained to represent anybody, so I think you would be doing yourself a disservice if you don't have a lawyer representing you." *Id*. at 6-7. When Mr. Powell replied that he was not a criminal defendant but rather a corporation, the court admonished him further: "You're an individual. I don't care what you tell me about being an LLC. You're not an LLC. You're not a corporation. You're going to be sentenced here. Now, I'm giving you the opportunity to have a lawyer represent you, and I think you should accept that." *Id*. at 8. Mr. Powell answered that he wanted an attorney who would represent him in his private capacity. The court then set a date for the sentencing hearing, although that date was later pushed back because the competency evaluation had not been completed. At the next status hearing on October 26, 2007, the district court appointed standby counsel for Mr. Powell in the hope that it would speed up the competency evaluation.

During the next three months, Mr. Powell was before the district court three more times, and each time he made a point to announce that the standby counsel was not his attorney. At the last of these appearances, the tenth status hearing on April 8, 2008, the court reviewed the results of the competency evaluation and found that Mr. Powell was competent to proceed.

Mr. Powell was finally sentenced six months later, on June 5, 2008. At that proceeding, Mr. Powell, who appeared pro se, made no mention of corporate fictions or secured parties and instead focused on the merits of his case. Except for a few instances when his standby counsel interjected, Mr. Powell was in control of the conduct of his case. He presented a range of legal and factual objections to the application of the United States Sentencing Guidelines, including a challenge to the court's use of relevant conduct in determining his offense level. He conducted a detailed cross examination of a government agent, during which he sought to discredit the witness's testimony and to cast doubt on a number of the Government's allegations about his trafficking operation. He also convinced the court to allow him, by way of questioning from the prosecutor and his standby counsel, to examine one of the victims who was present in the courtroom.

At the conclusion of the proceeding, the district court sentenced Mr. Powell to the statutory maximum term of thirty years' imprisonment. The court also imposed a five-year term of supervised release.

## II

## DISCUSSION

### A.

Mr. Powell argues that he did not knowingly and intelligently waive his right to counsel at sentencing because, he insists, the district court failed to explain adequately the dangers of self-representation. As a remedy, he seeks to be resentenced.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant a right to counsel at sentencing. *United States v. Johnson*, 534 F.3d 690, 693 (7th Cir. 2008); *United States v. Irorere*, 228 F.3d 816, 826 (7th Cir. 2000). A defendant does not, however, have a right to *appointed* counsel of his choice. *United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008). A defendant may waive the right to counsel, whether through words or conduct, provided he does so knowingly and intelligently. *Faretta v. California*, 422 U.S. 806, 835 (1975); *Alden*, 527 F.3d at 660. In determining if a waiver was knowing and intelligent, we evaluate four factors: (1) whether the district court conducted a formal hearing at which it could admonish the defendant about the risks of proceeding pro se, (2) whether the record discloses other evidence establishing that the defendant understood the risks of self-representation, (3) the defendant's background and experience and (4) the context of the defendant's waiver. *United States v. Avery*, 208 F.3d 597, 601 (7th Cir. 2000); *United States v. Bell*, 901 F.2d 574, 577-79 (7th Cir. 1990). This court reviews for an abuse of discretion a district court's determination that a waiver was knowing and intelligent. *United States v. Todd*, 424 F.3d 525, 530 (7th Cir. 2005); *Avery*, 208 F.3d at 601.

### B.

Because the background context provides the strongest evidence supporting a finding of waiver, we begin our analysis with the fourth factor. At sentencing, the district court clearly articulated its determination that Mr. Powell was attempting to game the proceedings by bombarding the court with irrelevant filings and setting unreasonable conditions on appointed attorneys. Indeed, appellate counsel acknowledges that Mr. Powell's insistence on being treated as a corporation likely was grounded in strategy.

Counsel's concession is consonant with the district court's finding that Mr. Powell understood what he was up to, and we have held that evidence of strategic delay weighs in favor of finding a waiver to be knowing and intelligent. *United States v. Egwaoje*, 335 F.3d 579, 586 (7th Cir. 2003); *United States v. Sandles*, 23 F.3d 1121, 1129 (7th Cir. 1994).

The remaining factors solidify the district court's finding of a knowing and intelligent waiver. As for the first factor, district courts are not required to give a "'hypothetical lecture on criminal law.'" *Todd*, 424 F.3d at 531 (quoting *United States v. Moya-Gomez*, 860 F.2d 706, 732 (7th Cir. 1988)). The district court must find, however, that the defendant wants to proceed pro se, and also that he appreciates the difficulties he will encounter in representing himself. *Johnson*, 534 F.3d at 694; *Todd*, 424 F.3d at 531.

Mr. Powell argues that the district court's admonishments at its status hearing on October 19, 2007, fell short because the court failed to address explicitly the range of procedural difficulties he would face at sentencing. Mr. Powell cites no authority for the proposition that a district court must recite a litany of potential risks of self-representation. Indeed, we have rejected the notion that any checklist of warnings is mandated. *United States v. Hill*, 252 F.3d 919, 928 (7th Cir. 2001); *see Faretta*, 422 U.S. at 835. It is enough, rather, for the district court to "ensure that the defendant knows his rights and avoids hasty decisions." *Hill*, 252 F.3d at 928. That obligation is met if the court alerts the defendant to the "difficulties" of self-representation and highlights some of the complexities of trial procedure. *Smith v. Grams*, 565 F.3d 1037, 1046 (7th Cir. 2009); *United States v. Oreye*, 263 F.3d 669, 672 (7th Cir. 2001); *Hill*, 252 F.3d at 928-29. The district court did that here by telling Mr. Powell that he lacked the proper training to appear alone and warning him that he would be doing himself a "disservice" if he did not accept an attorney. R.217 at 6-8. Mr. Powell had six months to act on this advice, and the court supplemented it with regular reminders to Mr. Powell that he was a criminal defendant facing sentencing.

The second factor likewise supports the district court's finding of a knowing and intelligent waiver. Mr. Powell repeatedly acknowledged his own limitations when he told the court that he did not wish to represent himself. That recognition weighs in favor of the finding that Mr. Powell knew the risk of going alone. *See United States v. England*, 507 F.3d 581, 587 (7th Cir. 2007); *Sandles*, 23 F.3d at 1128. Mr. Powell argues that his approach at sentencing was ill-conceived and likely counterproductive; instead of trying to prove his innocence, he argues, he should have been pleading for a lighter sentence. Mr. Powell's argument misconceives the depth of the district court's inquiry: "[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Godinez v. Moran*, 509 U.S. 389, 399 (1993); *see also United States v. Berry*, 565 F.3d 385, 390 (7th Cir. 2009). Even so, Mr. Powell's performance at sentencing demonstrated normal intelligence and an ability to make

rational, if misguided, decisions. He attempted to poke holes in the testimony of the Government's witness, and, through a series of pointed objections, demonstrated an understanding of the sentencing guidelines and the rules of evidence. Similarly, Mr. Powell argues that his nonsensical emphasis on "private capacity" suggests that his waiver was unintelligent. The district court properly concluded that this was a tactic, and that, if anything, it supports a finding of waiver.

As to the third factor, Mr. Powell's background and experience also support the district court's decision. In this context we consider the defendant's educational history as well as his previous encounters with the legal system. *England*, 507 F.3d at 587-88; *Sandles*, 23 F.3d at 1128-29. Mr. Powell received an Adult Education Certificate and completed some college course work. He has a number of prior convictions, which should have alerted him to the gravity of a criminal prosecution. Moreover, the district court, based on the opinion of a psychiatrist, determined that he was competent to proceed with sentencing. All of these factors point to the conclusion that he understood the consequences of his waiver. *See England*, 507 F.3d at 587-88; *Egwaoje*, 335 F.3d at 585-86. In light of the totality of the circumstances surrounding Mr. Powell's waiver, the district court did not abuse its discretion when it concluded that Mr. Powell waived his right to counsel at sentencing.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED