**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 11, 2012
Decided April 23, 2012

*Before*

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

Nos. 11-1739 & 11-1866

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeals from the United States District Court for the Western District of Wisconsin. |
| *v.* | Nos. 09-CR-122-BBC-01 & 09-CR-122-BBC-02 |
| ANDRE G. SIMMONS and MUHAMMAD SHIMAR SIMMONS, *Defendants-Appellants.* | Barbara B. Crabb, *Judge.* |

**O R D E R**

Andre Simmons masterminded a crack cocaine distribution ring comprising a coterie of friends and relatives, including his cousin and co-defendant Muhammad Simmons. 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2. (To avoid confusion, we refer to the defendants by their first names.) In an apparent attempt to insulate himself, Andre never handled the crack himself, but directed buyers to meet one of his cohorts, who then exchanged the crack for cash. One of those buyers, however, was a confidential informant conducting controlled buys for law enforcement, including two buys involving Muhammad, who pleaded guilty to a single count of distributing crack, pursuant to a plea agreement, and received a sentence of 84 months' imprisonment.

Andre pleaded not guilty and represented himself in a three-day bench trial. The government's witnesses included Andre's cousin, ex-wife, and girlfriends, who testified to selling crack at his direction; and the confidential informant, who testified to arranging crack deals with him. The government bolstered that testimony with audio and video recordings and phone records. Andre argued that his girlfriends, cousin and the confidential informant—who each made deals with the government—were lying. The district court found him guilty on all five counts of distributing crack and sentenced him to 240 months' imprisonment on each count, to run concurrently.

Both Andre and Muhammad filed notices of appeal, but their attorneys cannot find any nonfrivolous issues for review and move to withdraw under *Anders v. California*, 386 U.S. 738 (1967). The defendants did not respond to their attorneys' motions. *See* CIR. R. 51(b). We limit our review to the potential issues identified in counsels' facially adequate briefs. *See United States v. Schuh*, 289 F.3d 968, 973–74 (7th Cir. 2002).[1]

### Muhammad Simmons

Muhammad's counsel first notes that he does not want to challenge his conviction, and so counsel correctly omits discussion of possible challenges to the plea colloquy or the voluntariness of his guilty plea. *See United States v. Vallar*, 635 F.3d 271, 289 (7th Cir. 2011); *United States v. Knox*, 287 F.3d 667, 670–72 (7th Cir. 2002).

Counsel considers challenging the reasonableness of Muhammad's prison sentence, but correctly concludes that such a challenge would be frivolous. The court properly assessed a guidelines range of 151–188 months' imprisonment based on Muhammad's status as a career offender, which mandated a total offense level of 29 (after his decrease for acceptance of responsibility) and a criminal history of category VI. *See* U.S.S.G. § 4B1.1(b). The court next adequately considered the relevant § 3553(a) factors—including the nature of the offense (especially the small amount of crack), Muhammad's history and characteristics (particularly his remorse and attempts at rehabilitation), and the need to protect the community from the dangers of crack—and Muhammad's arguments in mitigation, particularly the small amount of crack involved, Muhammad's pursuit of regular employment, his cooperation with the government, and the disparity between powder- and

---

[1] We note at the outset that because each count of conviction involved less than five grams of crack, the appeals are not affected by the Supreme Court's recent decision in *Hill v. United States*, 132 S. Ct. 759 (Nov. 28, 2011), to consider the retroactivity of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (increasing from 5 to 28 grams the amount of crack required to trigger a mandatory minimum sentence).

crack-cocaine sentences under the guidelines. The court then sentenced Muhammad to 84 months' imprisonment—more than five years below the bottom of the guidelines range—and we presume that a sentence below a properly calculated guidelines range is reasonable. *United States v. Curtis*, 645 F.3d 937, 943 (7th Cir. 2011). Counsel has not identified any argument to rebut that presumption, nor have we.

## Andre Simmons

The first and most compelling issue raised in counsel's brief is whether Andre could argue that the trial court erred in permitting him to invoke his right to represent himself. 28 U.S.C. § 1654; *Faretta v. California*, 422 U.S. 806, 834 (1975). Although the court engaged in a lengthy and detailed colloquy with Andre about the risks of self-representation, it erred by not inquiring into his background, including his education and his experience with the legal system. *See United States v. Todd*, 424 F.3d 525, 533 (7th Cir. 2005). But counsel correctly notes that such an error is not fatal. *See id.* Our review would be deferential, and in addition to Andre's background, we would consider whether the district court conducted a formal hearing, whether he understood the risks of self-representation, and the context of his decision. *United States v. Cooper*, 591 F.3d 582, 587 (7th Cir. 2010); *Todd*, 424 F.3d at 530. The court explicitly warned him that he would not receive any special treatment and that he might miss things a lawyer would not. Despite the court's offer to appoint another lawyer with orders to proceed exactly as he instructed, Andre still preferred to proceed pro se with court-appointed stand-by counsel. Thus the court gave him a sense of what he needed to know, warned him of the risks of proceeding pro se, and saw for itself his determination to proceed on his own. *See Cooper*, 591 F.3d at 587. Although the court did not inquire into his legal experience or his abilities, his 14 prior convictions demonstrate his extensive first-hand experience with the criminal justice system. And Andre demonstrated considerable ability as a pro se defendant, entering into stipulations with the government, cross-examining witnesses, and raising objections.

Counsel next evaluates whether Andre could argue that the trial evidence did not support his convictions because all of the witnesses were so incredible that their testimony should have been discounted. Andre did elicit facts that undermined the credibility of most of his accusers: his girlfriends, ex-wife, and cousin each admitted to cutting deals with the government in exchange for their testimony, and the CI was a paid informant with two convictions for lying to police and two convictions for writing bad checks. But challenges to sufficiency face a high bar, requiring that "no rational trier of fact could have found the defendant guilty," *United States v. Doody*, 600 F.3d 752, 754 (7th Cir. 2010), and here the government provided ample eyewitness testimony that Andre knowingly distributed crack cocaine, *see* 21 U.S.C. § 841(a)(1); *United States v. Hatchett*, 245 F.3d 625, 631 (7th Cir. 2001), either by acting directly or by persuading others to act on his behalf, 18 U.S.C. § 2. Thus any

sufficiency challenge would have to assert that all of the witnesses were so incredible that no rational fact-finder would have believed them. The district judge, who had the opportunity to observe the witnesses and their demeanor, found them credible. We would not disturb such a credibility determination unless the testimony was "so implausible that it cannot be trusted as a matter of law," *United States v. Calabrese*, 572 F.3d 362, 369 (7th Cir. 2009), and ample circumstantial evidence bolstered the testimony, such as Andre's phone records and recordings from a body wire worn by the CI.

The penultimate argument counsel explores is whether Andre could argue that the district court's application of the "super-aggravating factor" (so-called because it applies only to offenders who also receive an aggravating role enhancement) in U.S.S.G. § 2D1.1(b)(14) violated the Constitution's ex post facto clause, Art. 1, § 9, because the Sentencing Commission enacted that guideline in 2011, after Andre committed the offenses in 2009. But because the guidelines are merely advisory, their application does not implicate the ex post facto clause. *United States v. Favara*, 615 F.3d 824, 829 (7th Cir. 2010); *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006). Thus, a challenge to the court's application of § 2D1.1(b)(14) would be frivolous.

Finally, counsel considers whether Andre could argue that the district court's approximation of the amount of crack cocaine violated his due process right to be sentenced based upon reliable evidence. In estimating the amount of drugs attributable to the offense, the district court included one witness's account of a crack rock "about the size of a golf ball." Andre argued at sentencing that no weight at all should be attributed to this account because the witness, Michael Cowart, also described the quantity as "smaller than" a golf-ball and repeatedly said he never saw the crack but he "just suppose[d] like [Andre] had acquired it." The prosecution responded that Cowart meant that although he never saw Andre *with* the crack, he did see a golf-ball shaped quantity of crack and that a crack rock that size would weigh at least an ounce (28.5 grams). The district court estimated the amount of drugs involved in the offense (as required by the Sentencing Guidelines, *see* U.S.S.G. § 2D1.1, cmt. 12) and determined that even if the "golf ball" of crack were not 28.5 grams, it still would have been at least 6 or 7 grams. Our review of the court's estimation is deferential. *United States v. Bautista*, 532 F.3d 667, 672 (7th Cir. 2008). Because the court based its approximation upon a preponderance of the reliable evidence, we agree with counsel that a challenge to the court's approximation would be frivolous. *See United States v. Artley*, 489 F.3d 813, 822–23 (7th Cir. 2007). Furthermore, because Andre qualified for the career offender enhancement, a lower drug amount would not have altered his offense level or his guidelines range. *See* U.S.S.G. § 4B1.1.

Although Andre did not respond to his counsel's motion (he was appointed counsel for purposes of sentencing and appeal), before his sentencing hearing he did write the

district court an ex parte letter in which he asked to appeal and expressed a desire to challenge on appeal the denial of his pretrial motion for "suppression and disclosure of all *Brady* material." The district court had denied the *Brady* motion both because it was untimely filed and because Andre included no basis for his belief that the government had withheld evidence. Andre has not attempted to raise this issue in a response to counsel's motion, but even if he had, we would have agreed with the district court that Andre was not entitled to additional discovery or an in camera review without "some plausible showing" that the requested information was both material and favorable to his defense. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 58–59 & n.15 (1987); *United States v. Jumah*, 599 F.3d 799, 809–10 & n.6 (7th Cir. 2010).

Counsel's motions to withdraw are **GRANTED** and the appeals are **DISMISSED**.