**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued October 7, 2015
Decided October 27, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-1186

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:14-CR-33-001 |
| OTIS TATE, *Defendant-Appellant*. | Robert L. Miller, Jr., *Judge*. |

### O R D E R

Otis Tate fired his court-appointed attorney on the morning that his criminal trial began. He then exercised his right to represent himself, *see Faretta v. California*, 422 U.S. 806, 834 (1975), and was convicted on all charges. Now with counsel, Tate appeals his convictions, arguing that his waiver of counsel was invalid. The district court correctly concluded that Tate knowingly and intelligently waived his right to counsel, so we affirm the judgment.

Tate was charged with possessing a firearm as a felon, 18 U.S.C. § 922(g)(1), and possessing a stolen firearm, *id*. § 922(j). The district court appointed attorney David Wemhoff to represent Tate. On the first morning of trial, Wemhoff moved to

withdraw, citing unstated "professional considerations." When asked to comment, Tate conjectured that his lawyer and the prosecutor were in cahoots against him. Tate also said that he and Wemhoff disagreed about defense strategies, namely, Tate wanted counsel to impeach government witnesses with affidavits that Tate personally had obtained and to cross-examine witnesses about a missing surveillance recording.

The government objected to a continuance due to concerns of witness tampering and logistics. At least one witness had told the government that Tate asked him not to testify. (Unbeknownst to the government or court at the time, Tate had convinced some witnesses to sign false affidavits and attempted to prevent others from testifying.) To minimize the risk of tampering or intimidation, the government had waited until three days before trial to disclose the identity of cooperating witnesses but now that information was out in the open. The government was also concerned about the logistics of transporting prisoner witnesses.

The district court refused to appoint substitute counsel, reasoning that a different attorney might likewise disagree with Tate's proposed strategies. The court denied a continuance due to the government's concerns and the waiting jury pool. The court gave Tate two options—keep Wemhoff or represent himself—and added that, either way, the trial was going forward as scheduled.

When Tate insisted on representing himself, the court asked about his decision. Tate said he had attended school through the eleventh grade and later obtained a GED. He had "been in" three state-court trials, but he was not familiar with the federal rules of evidence or criminal procedure. The district court warned Tate that he would have to follow the rules of evidence and procedure, and also question witnesses. And the prosecutor would have an advantage, the court continued, because he has a college degree, a law degree, 20 years' experience in law, and familiarity with the rules of evidence and procedure. The court warned Tate that the "deck is stacked" against lay persons representing themselves.

Tate stood by his decision, though the court appointed Wemhoff as standby counsel. During the first day of trial, the judge confirmed three times—after voir dire, before the lunch recess, and during the afternoon—that Tate still wanted to represent himself.

Tate relented the next day after the jury had found him guilty and accepted Wemhoff as counsel for the sentencing phase. The district court sentenced Tate to 120 months' imprisonment and 3 years' supervised release.

Tate argues that the district court's inquiry was too cursory to satisfy the minimum requirements necessary for a valid waiver of counsel. Tate's very premise is flawed because the absence of "a full inquiry" is not dispositive; we look to the record as a whole to determine whether he in fact made a knowing and informed waiver of counsel. *United States v. Todd*, 424 F.3d 525, 531 (7th Cir. 2005); s*ee United States v. Johnson*, 534 F.3d 690, 693 (7th Cir. 2008). To determine if the waiver was knowing and intelligent, we consider four factors: (1) the extent of the district court's inquiry into Tate's decision to represent himself, (2) other indicia in the record that Tate understood the dangers and disadvantages of self-representation, (3) Tate's background and experience, and (4) the context of Tate's choice to represent himself. *See United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008); *Todd*, 424 F.3d at 530.

Tate concedes that the district court conducted a formal hearing into his decision. But he contends that the court's inquiries did not establish that he understood the dangers and disadvantages of self-representation. The record shows otherwise. Tate acknowledged that he did not know the federal rules of evidence or procedure and that he must question witnesses in compliance with the rules. He heard that his background did not rival the prosecutor's extensive experience. And yet he chose to represent himself even after conceding this imbalance of credentials. *See United States v. Avery*, 208 F.3d 597, 602 (7th Cir. 2000). His lack of *qualifications* to represent himself is irrelevant to whether that choice was knowing and intelligent. *See Godinez v. Moran*, 509 U.S. 389, 399–400 (1993); *Faretta*, 422 U.S. at 835–36.

Tate's background and experience also weigh in favor of the district court's finding of a knowing and intelligent waiver. *See United States v. Sandles*, 23 F.3d 1121, 1126 (7th Cir. 1994). The judge could observe Tate's approximate age, and he elicited that Tate had obtained a GED. *See Todd*, 424 F.3d at 533. Tate was familiar with the charges; he had stipulated to several elements of those charges in earlier proceedings. And he was no stranger to the legal system, having been in three prior trials. *See United States v. Moya-Gomez*, 860 F.2d 706, 736 (7th Cir. 1988). Three trials suggests enough familiarity with a courtroom and trial procedures that Tate could appreciate the risks of navigating a trial without counsel. *See Todd*, 424 F.3d at 533; *United States v. Egwaoje*, 335 F.3d 579, 585–86 (7th Cir. 2003). His strategy and performance at trial affirms his familiarity with

the courtroom; he subpoenaed a witness, introduced exhibits, cross-examined witnesses, and tried to impeach the credibility of government witnesses. *See Todd*, 424 F.3d at 533.

The context of Tate's waiver leaves little doubt that he waived counsel knowingly and intelligently. He was not "forced" to represent himself: His waiver of counsel was a tactical decision so that he could pursue his own defense strategy of impeaching witnesses with their affidavits. *See United States v. Volpentesta*, 727 F.3d 666, 678 (7th Cir. 2013); *United States v. Bell*, 901 F.2d 574, 579 (7th Cir. 1990). And the district court offered him standby counsel and multiple opportunities to change his mind after wading into the thick of trial.

The district court had good reason to refuse to appoint a new attorney or to continue the trial. Tate had accepted appointed counsel's representation for four months without complaint and delayed until the morning of trial to voice dissatisfaction and request substitute counsel. *See Volpentesta,* 727 F.3d at 676; *Alden,* 527 F.3d at 660; *United States v. Oakey*, 853 F.2d 551, 553 (7th Cir. 1988). Concerns of witness tampering and scheduling logistics weighed against a continuance. *See Moya-Gomez*, 860 F.3d at 737.

The record as a whole supports the district court's conclusion that Tate waived his right to counsel knowingly and intelligently. We affirm the judgment.

AFFIRMED.