**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James OAKEY, Defendant–Appellant.**

No. 87–3134.

United States Court of Appeals,
Seventh Circuit.

Argued May 23, 1988.

Decided July 29, 1988.

As Amended on Denial of
Rehearing Oct. 4, 1988.

William H. Theis, Chicago, Ill., for defendant-appellant.

David M. Taliaferro, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

KANNE, Circuit Judge.

James Oakey, who was convicted of two counts of failure to file an income-tax return, appeals claiming first, that he was denied his constitutional right to represent himself when the court denied his mid-trial motion to proceed *pro se*, and second, that the district court's failure to sever the tax charges from several racketeering and mail fraud charges, was in error. For the reasons set forth below, we affirm the conviction.

Oakey, a former Cook County traffic court judge and later a practicing attorney in the Cook County misdemeanor courts, was just one of the many defendants netted by Operation Greylord. He was charged with mail fraud, racketeering, and conspiring to violate RICO, and with failing to file tax returns.

Defendant and eleven co-defendants were tried beginning on November 25, 1986. Prior to trial, Oakey moved to have the tax counts severed from the mail fraud and racketeering charges. That motion was denied. During the course of the trial, Oakey's attorney was suddenly taken ill and hospitalized. As a result, on January 6, 1987, the district court was forced to declare a mistrial as to Oakey.

On May 4, 1987, Oakey, who at his own request received appointed counsel, was again tried to a jury. However, Oakey did not file a motion prior to this trial to sever the tax counts from all the other charges against him. On May 15, 1987, the jury found Oakey guilty on all counts.

Oakey then filed a motion for a new trial arguing that his convictions for mail fraud should be reversed in light of the Supreme Court's decision in *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The district court granted defendant's motion on July 20, 1987, and dismissed the mail fraud counts, ordered a new trial on the RICO counts, and affirmed the conviction on the tax counts.

Oakey next moved to stay sentencing on the tax counts until after a new trial on the RICO counts could be held. The court denied this motion and sentenced Oakey on the tax counts. Oakey has now appealed his conviction for failure-to-file.

Oakey raises two issues on appeal. First, he claims he was deprived of his constitutional right to self-representation. At the beginning of the fourth day of his second trial, without consulting his attorney, Oakey suddenly indicated that he wished to address the court. Oakey stated that after mulling it over extensively, he was of the opinion he was not getting enough input in his defense. Although he was pleased with the job his appointed counsel was doing and with their relationship, Oakey requested that his attorney remain in the court only in an advisory capacity.

> DEFENDANT OAKEY: I just made the decision when I was not able to talk to Mr. Meyer prior to court this morning, that—and then I will have full use of Mr. Meyer. And I know Mr. Meyer. He will cooperate with me, will help me. . . .
>
> But I want to use my own experience a little bit, my own knowledge of the case, et cetera, to assist in my own defense, and I respectfully ask the court.

(Transcript of the Trial, Vol. IV, pp. 520–21). After hearing argument from both Oakey's trial counsel, who expressed the opinion that Oakey had the right to represent himself, and from the government, which argued that Oakey had no right to

request self-representation in the middle of the trial, the court denied Oakey's request.

The court ruled initially that Oakey's attorney had been doing a commendable job and that he frequently consulted with Oakey throughout the trial. The court also said:

> In addition to that, if you will recall, Mr. Oakey, at the time that you asked for your mistrial, you told me that you weren't competent to represent yourself. You told me that. And that was one of the bases upon which I granted the mistrial back then.

(Transcript, Vol. IV, p. 528).

Following the court's comment, Oakey again asked to address the court, this time disclaiming that he wanted to proceed *pro se.*

> DEFENDANT OAKEY: I read the Chicago Lawyer last night, so I know all the federal rules.
>
> No, I did not ask to represent myself. I asked that I represent myself as well as having the assistance and the guidance of Mr. Meyer. And I do admit ... that I am unfamiliar with the federal rules....

(Transcript, Vol. IV, p. 524).

■ Clearly, a defendant has the constitutional right to conduct his own defense. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); 28 U.S.C. § 1654. However, a defendant may not engage in "hybrid" representation by acting as co-counsel along with either a court-appointed attorney or with his own attorney. *McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984). Hybrid representation is disfavored since it allows a defendant to address the jury, in his capacity as counsel, without being cross-examined, in his capacity as a defendant. *United States v. Tucker,* 773 F.2d 136 (7th Cir.) *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3338, 92 L.Ed.2d 742 *reh'g denied,* 478 U.S. 1035, 107 S.Ct. 23, 92 L.Ed.2d 774 (1985). Furthermore, although a defendant has the right to proceed *pro se,* a request to do so must be made in a timely fashion. *United States v. Smith,* 780 F.2d 810 (9th Cir.1986) (demand for self-representation must be made before meaningful trial proceedings, such as jury selections, begin; demand is untimely when made on the third day of trial); *Fulford v. Maggio,* 692 F.2d 354 (5th Cir.1982), *rev'd on other grounds,* 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794, *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 29, 77 L.Ed.2d 1451 (1983) (right to *pro se* defense is not absolute once trial begins; trial court has discretion to balance alleged prejudice to defendant against potential disruption and delay); *Brown v. Wainwright,* 665 F.2d 607 (5th Cir.1982) (request to assume defense prior to closing arguments on third day of trial held untimely); *United States v. Lawrence,* 605 F.2d 1321 (4th Cir.1979) *cert. denied,* 444 U.S. 1084, 100 S.Ct. 1041, 62 L.Ed.2d 770 (1980) (request to proceed *pro se* must be timely).

■ We think the district court properly denied Oakey's request to proceed *pro se* for two reasons. First, Oakey's request, made prior to the fourth day of trial, was obviously not timely. *U.S. v. Smith, supra; U.S. v. Lawrence, supra.* We agree with these decisions and now find that where a request to proceed *pro se* is untimely, a court, may in its discretion, deny the motion. Second, even if timely, Oakey's request was ambiguous. Though conceding that his appointed (not standby) attorney was doing an admirable job, Oakey sought more input in his defense. At first, it appeared that he was asking to proceed *pro se,* retaining his attorney only as stand-by counsel. Then, almost with the same breath, Oakey admitted he was not familiar with the federal rules and that he was not asking to represent himself. We can only conclude that Oakey was asking to act as co-counsel.

As already stated, this hybrid form of representation is not permissible. "A defendant does not have a constitutional right to choreograph special appearances by counsel." 465 U.S. at 183, 104 S.Ct. at 953.

> The constitutional right to self-representation necessarily entails a waiver of the constitutional right to be represented by counsel....
>
> When a defendant refuses to waive his right to counsel, while demanding to proceed *pro se,* the trial court will find it hard to know which constitutional right is being asserted....

*Tuitt v. Fair,* 822 F.2d 166, 174 (1st Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). A demand to proceed *pro se* must be unequivocal. *Id.; Meeks v. Craven,* 482 F.2d 465 (9th Cir. 1973).

Oakey's ambivalence is only too evident from his dialogue with the court. We do

not believe Oakey clearly waived his right to representation or made his motion in a timely fashion and thus, we find that his motion to proceed *pro se* was properly denied.

■ Oakey's second argument on appeal is that the court erred when it failed to sever the failure to file counts from the racketeering and mail fraud counts. Oakey claims the joinder of the tax counts with the other counts was improper both under Fed.R.Crim.P. 8(a) and Fed.R.Crim.P. 14.

From the record presented to us at the time of oral argument, it appeared that Oakey had waived this claim by failing to seek severance of the tax counts at his second trial. A supplement to the record filed by Oakey now discloses that the district judge at the first trial held that all Oakey's pretrial motions and the respective rulings thereon would carry over to the second trial. Thus, Oakey's motion for severance was preserved.[1]

Under Fed.R.Crim.P. 8(a), two or more offenses may be brought in the same indictment if they are of:

> ... similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

To determine whether two or more acts arise from the same transaction or plan, a court must look to "what the indictment charges." *United States v. Velasquez*, 772 F.2d 1348, 1354 (7th Cir.1985), *cert. denied*, 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986). Additionally, as defendant concedes, a tax count is properly joined to other counts of an indictment if the other crimes generated the income on which the defendant evaded payment. *United States v. Anderson*, 809 F.2d 1281, 1288 (7th Cir. 1987).

■ Oakey contends however, that the indictment in this case fails to connect the tax counts to the other counts charged. In Count 1 of the indictment, Oakey was charged with participating in a RICO conspiracy between 1979 and 1983 by paying cash bribes to court personnel to steer unrepresented defendants to him. It was alleged that when cases of unrepresented defendants were sent to him, Oakey would obtain the cash bond refund checks, using 15% to 25% of the checks to pay bribes to court personnel. It is implicit from the indictment that Oakey kept the remainder of the cash bond refund checks for himself. Further, as part of the RICO conspiracy, the allegations in Count 1 charge Oakey with concealing and hiding acts done in furtherance of the conspiracy. Oakey was similarly charged in Count 10 with direct RICO violations involving the same bribery scheme. In those counts which charged mail fraud, Oakey was alleged to have caused the cash bond refund checks of 10 defendants to be mailed to him. The checks were made payable to Oakey as attorney for those various defendants.

When the indictment is read as a whole, it is unmistakable that the counts charging failure to file income tax were related to the racketeering and mail fraud counts. The proceeds from the bond refund checks represented income to Oakey. In fact, during trial, the analysis of Oakey's income for both 1982 and 1983 included evidence of his receipt of cash bond refunds. Thus, not only was there income received which related to the mail fraud counts, the failure to file tax returns could reasonably be viewed as a part of an effort to avoid detection of the RICO bribery scheme. There is an interrelationship between the elements of proof of the tax counts and the other counts of the indictment with which Oakey was charged. Thus, we find that joinder of the tax counts with other counts in the indictment was proper pursuant to Rule 8(a). *United States v. Anderson*, 809 F.2d at 1288; *United States v. Wilson*, 715 F.2d 1164, 1171 (7th Cir.), *cert. denied*, 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983). *See also United States v. Isaacs*, 493 F.2d 1124, 1159 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146, *reh'g denied*, 418 U.S. 955, 94 S.Ct. 3234, 41 L.Ed.2d 1178 (1974).

Oakey also argues that regardless of the propriety of joining the tax counts to the other counts pursuant to Rule 8(a), the denial of his motion for severance was an

---

1. Because one of the claims on appeal related to a motion for severance, it was incumbent upon counsel for Oakey to make certain that the motion itself and the judicial decisions dealing with that motion were a part of the record on appeal. It is the duty of the court to examine the record with regard to motions which form the basis of an appeal. The initial failure of counsel to cause an adequate record to be provided has resulted in an unnecessary expenditure of time both by counsel and the court.

abuse of discretion under Fed.R.Crim.P. 14 which, in its relevant part, states:

> If it appears that a defendant ... is prejudiced by a joinder of offenses ... the court *may* ... grant a severance.... (emphasis added).

Oakey claims that evidence relating to the bribery scheme was prejudicial to his defense on the tax counts since that evidence made him appear to be a "totally evil and corrupt person" and therefore likely to willfully fail to file a tax return.

The decision to grant or deny a motion for severance under Rule 14 will not be reversed absent a clear abuse of discretion relating to a show of actual prejudice to the defendant. *United States v. L'Allier,* 838 F.2d 234, 241 (7th Cir.1988), *United States v. Dounias,* 777 F.2d 346, 350 (7th Cir.1985).

It is apparent from the record that the evidence with regard to the tax counts was overwhelming and there is no reasonable basis to conclude that evidence as to other counts had an actual prejudicial effect on the tax count verdicts of the jury. Moreover, appropriate limiting instructions were given during the course of the trial and in the final charge directing the jury to consider the evidence on each count separately. The evidence relating to the elements of failing to file a tax return are easily distinguished from evidence which applied only to the RICO and mail fraud counts. The limiting instructions were an adequate safeguard. *United States v. Berardi,* 675 F.2d 894, 901 (7th Cir.1982).

Based on the foregoing, Oakey's conviction on two counts of failing to file tax returns is AFFIRMED.