In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 14-3010 & 14-3028

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PERRY HARRINGTON,

*Defendant-Appellant.*

_____

Appeals from the United States District Court for the
Central District of Illinois.
No. 12-10118 — **James E. Shadid**, *Chief Judge.*

_____

ARGUED JANUARY 27, 2016 — DECIDED MARCH 2, 2016

_____

Before POSNER, KANNE, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge*. Appellant Perry Harrington contends in this appeal that he was deprived of his right to counsel for his sentencing hearing. Harrington had persuaded the district court to discharge court-appointed counsel (twice) and to let him proceed pro se to make post-trial motions. On appeal Harrington argues that he did not validly waive his right to counsel for his sentencing hearing. We disagree and affirm the judgment.

I.  *Factual and Procedural Background*

Harrington sold cocaine to a confidential informant. He was charged with six counts of distributing a controlled substance, 21 U.S.C. § 841(a)(1), (b)(1)(c), and one count of possessing a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(B). The district court appointed attorney William Charnock to represent Harrington at trial. Harrington was convicted by a jury on all seven counts.

Attorney Charnock then filed a motion for acquittal or new trial. A day later, however, the court received a letter from Harrington saying that he believed Charnock was ineffective and asking that new counsel be appointed. Without addressing the merits of Harrington's accusations, the court discharged Charnock and appointed attorney William Loeffel to represent Harrington in post-trial motions and sentencing.

A week before the scheduled sentencing hearing, attorney Loeffel moved for a competency evaluation. He reported that Harrington had been exhibiting bizarre behavior. During a visit two weeks earlier, Harrington had "frequently made comments that made no sense," and Loeffel learned that Harrington might have ingested cleaning solution and deodorant in his jail cell three days after their visit, leading jail personnel to place him on suicide watch.

At a hearing on the motion, Loeffel said that he had met with Harrington the day before and that Harrington had continued to appear "quite delusional." Harrington told the court that he opposed the motion, yet moments later remarked that attorney Loeffel and his colleagues were trying to kill him by drugging him. Harrington told the court that

he had reviewed the Presentence Investigation Report (PSR) with Loeffel and identified errors in the report, but that he no longer wanted to be represented by Loeffel.

When the court asked Harrington who would represent him if Loeffel did not, Harrington replied: "I'm ready to represent myself or I am willing to bring in other counsel. ... [I] will hire other counsel or you can appoint me other counsel, but the thing about it is [Loeffel] needs not to counsel anybody. He needs counseling himself. ... And I'm ready to represent myself right now. You can sentence me right now."

The judge denied Harrington's request to relieve Loeffel. He also granted Loeffel's motion to have Harrington evaluated but made clear he was doing so out of caution rather than any genuine doubt about Harrington's competency. It was "more than a coincidence," the judge said, that the issue was first raised just two weeks before sentencing, given that Harrington had been in custody for over a year without any question being raised about his mental state.

After a delay for a psychological evaluation, the court held a hearing on Harrington's competency. A clinical psychologist who had evaluated Harrington found no evidence that he was suffering a mental illness and opined that he had been malingering. The parties stipulated to the psychologist's findings, and the court found Harrington competent to proceed to sentencing.

At the competency hearing, however, Harrington again expressed dissatisfaction with attorney Loeffel and asked that he be replaced. Harrington complained that Loeffel had "not brought any of my discovery out." The judge asked Harrington if he wanted to represent himself, and Harring-

ton said he did not. The judge then refused to remove Loeffel from the case, reminding Harrington that his first appointed attorney already had been replaced and saying that Harrington had not given "any indication" why Loeffel should not continue to represent him. The court then set a date for a hearing on post-trial motions and sentencing.

On the scheduled day, however, Harrington renewed his request to proceed pro se. He said that he had still been "having problems" with Loeffel and continued to say he was not satisfied with Loeffel's handling of discovery. The court initially denied Harrington's request to proceed pro se. But the government warned that if Harrington were not permitted to represent himself at sentencing, he could appeal on the ground that he was denied the right to represent himself. The court agreed: "My initial reaction was to save Mr. Harrington from himself but I can't do that."

The court then engaged in a colloquy with Harrington. In response to the court's questions, Harrington said that he did not want to represent himself but had "no choice" if he were going to obtain discovery. Harrington acknowledged that he had not reviewed the sentencing guidelines or represented himself before, but he said that he had some prior experience filing and arguing post-trial motions. The judge told Harrington that he thought self-representation was "as bad an idea as you may have ever had," adding that he did not think Harrington would "serve yourself well." Harrington insisted, though, that he wanted to represent himself. The court then allowed Loeffel to withdraw, gave Harrington two weeks to supplement any post-trial motions, and set yet another date for a hearing on post-trial motions and sentencing.

At that hearing, five weeks later, Harrington argued several post-trial motions, all of which the court denied. The court then announced its intention to proceed immediately to sentencing. At that point, Harrington said he wanted to be represented by counsel. He told the court he did not think he was capable of representing himself, and he said that he had agreed to do so only for the purpose of getting the "actual issues on the record." The court, however, determined that Harrington's conduct amounted to a waiver of counsel and that he was making this request "just for the purpose of delay." The request for counsel, in any event, would be "fruitless" based on Harrington's prior conduct, and the court said that if the request were granted, the court "would simply address at a later date another request to have counsel removed."

Harrington thus represented himself at sentencing. He called four character witnesses—his mother, father, and two sisters—and argued that his guideline range of 360 months to life was excessive given the quantity of cocaine base and cocaine involved in the offense. The court sentenced him to 360 months, based primarily on the seriousness of the offenses and Harrington's risk of re-offending.

II. *Analysis*

A criminal defendant is entitled under the Sixth Amendment to the United States Constitution to waive his right to counsel and to conduct his own defense when he knowingly and intelligently elects to do so. *Faretta v. California*, 422 U.S. 806, 835 (1975). To determine whether a defendant's decision to proceed pro se was knowing and intelligent, we consider four factors, though the lines between them are not always distinct: (1) the extent of the district

court's "formal" inquiry into the defendant's decision to represent himself, (2) whether other evidence in the record shows that "the defendant understood the dangers and disadvantages of self-representation," (3) the defendant's experience and background, and (4) the context of the defendant's choice to represent himself. *United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008); *United States v. Todd*, 424 F.3d 525, 530 (7th Cir. 2005). The context factor often refers to the stage of the proceedings and circumstances that indicate the defendant's strategic or tactical reasons for going forward without counsel. See, e.g., *United States v. Avery*, 208 F.3d 597, 602 (7th Cir. 2000).

Harrington, represented on appeal by new counsel, argues that the district court erred by finding that he had waived his right to counsel for sentencing. He begins by asserting that the first factor weighs in his favor because the court did not conduct a formal inquiry into his decision to proceed pro se. He argues, for instance, that the court's inquiry was not sufficient because the court did not ask whether he understood the charges or the penalties he was facing. See *United States v. Belanger*, 936 F.2d 916, 918 (7th Cir. 1991) ("strongly suggesting" that district courts "at a minimum" inform defendants of crimes with which they are charged, nature of the charges, and possible sentences as well as the difficulties defendants would encounter in acting as their own counsel). He also argues that the court failed to specify the disadvantages of self-representation.

Harrington's argument glosses over the post-trial timing of his request. "The Supreme Court has never held that waivers of counsel at any stage of the proceedings other than trial require such a give-and-take between the accused and

someone trying to educate him about counsel's benefits. ...
Once the trial is over, the major complexities, choices, and
risks are past." *Speights v. Frank,* 361 F.3d 962, 965 (7th Cir.
2004), citing *Iowa v. Tovar*, 541 U.S. 77, 89 (2004).

Harrington was already well aware of the charges and
their severity. He had already gone through trial with coun-
sel and been convicted of the charges. He had reviewed the
PSR with attorney Loeffel, so he was aware of the penalties
he was facing and the factors relevant to sentencing. Besides,
the judge did warn Harrington that proceeding alone was
"as bad an idea as you may have ever had" and would not
serve Harrington well. See *United States v. Hoskins*, 243 F.3d
407, 409 (7th Cir. 2001) (upholding waiver of counsel after
trial where district court advised defendant that he "would
be far better off being defended by a trained lawyer" and it
would be "unwise" to defend himself given complexity of
the case).

As for the second factor, Harrington asserts that the rec-
ord cannot support a conclusion he understood the disad-
vantages of self-representation. During one of the earlier sta-
tus conferences, though, the judge explained the sentencing
process to him. Harrington replied that he not only under-
stood the process but was also prepared to proceed pro se
through sentencing. During that conference the judge also
established that Harrington had reviewed the PSR with at-
torney Loeffel. Harrington also showed awareness of the
proceedings' significance by raising several objections and
corrections to the PSR during the sentencing hearing.

Regarding the third factor, Harrington argues that the
court failed to ensure the voluntariness of his waiver by not
explicitly asking him on the record about his background

and experience. The judge did not ask Harrington about his background, but he noted that Harrington had attained the equivalent of a high school diploma and attended college courses. See *United States v. Sandles*, 23 F.3d 1121, 1128 (7th Cir. 1994). Although he had never represented himself before, Harrington did have prior experience with the criminal justice system (three prior felony drug convictions) that suggested "familiarity with courtroom procedures" as well as an "understanding of the risks involved and the nature of the charges brought against him." *United States v. Egwaoje*, 335 F.3d 579, 585–86 (7th Cir. 2003); *Todd*, 424 F.3d at 533; *Moya-Gomez*, 860 F.2d 706, 736 (7th Cir. 1988).

Finally, Harrington argues that the fourth factor—the context of his decision to proceed pro se—weighs against a finding that his waiver was knowing and intelligent because no evidence reflects that he was attempting to delay or manipulate the proceedings. *Egwaoje*, 335 F.3d at 586 (concluding that evidence of manipulation was "strongest evidence supporting a finding of waiver"); *Sandles*, 23 F.3d at 1129. His post-trial filings, he says, show not an attempt to delay or manipulate the court but a lack of understanding of criminal procedure.

The district court reasonably concluded that Harrington's decision was strategic. Harrington explained that he discharged both appointed attorneys because he disagreed with their defense strategies. A defendant who waives his right to counsel for strategic reasons tends to do so knowingly. See *United States v. Volpentesta*, 727 F.3d 666, 678 (7th Cir. 2013); *Todd*, 424 F.3d at 533; *United States v. Bell*, 901 F.2d 574, 579 (7th Cir. 1990). The district court's finding that a desire for delay motivated Harrington's request for counsel also "mili-

tates in favor of a knowing and intelligent waiver." *Sandles*, 23 F.3d at 1129. Harrington suggests that the court could have appointed standby counsel if it was concerned about his motives, but a court has no obligation to do so. See *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006); *United States v. Beckton*, 740 F.3d 303, 307 (4th Cir. 2014); *United States v. Bova*, 350 F.3d 224, 226–27 (1st Cir. 2003); *Neal v. Texas*, 870 F.2d 312, 316 (5th Cir. 1989).

To sum up, Chief Judge Shadid took sufficient steps to ensure that Harrington's waiver of his right to counsel was knowing and intelligent. Unless the judge could convince Harrington to change his mind, the judge had no choice but to allow Harrington to proceed, as he had insisted, without counsel. The judgment of the district court is

AFFIRMED.