In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1254

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RUBEN MANCILLAS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cr-00020-WTL-DML-1 — **William T. Lawrence**, *Judge.*

ARGUED DECEMBER 7, 2017 — DECIDED JANUARY 23, 2018

Before BAUER, MANION, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury convicted Ruben Mancillas of
two counts of possessing ammunition as a felon, in violation of
18 U.S.C. § 922(g)(1). On appeal, he raises two challenges to his
sentencing: (1) that he was denied the right to represent
himself at sentencing; and (2) that the district court applied the
wrong base offense level because the Indiana offense of

strangulation is not a "crime of violence" for Sentencing Guidelines purposes. We hold that the Indiana offense of strangulation is a crime of violence for Sentencing Guidelines purposes, and thus, the district court did not err in calculating Mancillas' base offense level. However, we remand for resentencing since the court summarily denied Mancillas' clear and unequivocal request to represent himself at sentencing and failed to conduct a *Faretta* colloquy.

## I.  BACKGROUND

On August 4, 2015, Mancillas and his girlfriend engaged in a heated argument in their Indianapolis home. The argument drew the attention of Mancillas' next-door neighbor, Donna Little, when she heard gunshots. When Little looked out her back door, she observed Mancillas outside wielding a gun, and promptly called the police.

When officers from the Indianapolis Metropolitan Police Department arrived, Mancillas ran into a wooded area behind his house. After the officers detained him, the officers discovered ammunition on Mancillas' person, near the back-door of Mancillas' house, and in a duffel bag belonging to Mancillas in the wooded area behind his house. No gun was ever recovered from the search.

Mancillas was indicted on January 20, 2016, with two counts of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). Attorney Jeffrey Baldwin initially filed an appearance on behalf of Mancillas. However, Joseph Clearly of the Indiana Federal Community Defenders was appointed to represent Mancillas during his initial appearance. On May 23, 2016, Mancillas filed a pro se "Motion

for Withdraw of Counsel," and shortly thereafter, without the district court's intervention, Michael Donahoe of the Indiana Federal Community Defenders replaced Cleary as counsel.

Mancillas proceeded to trial with Donahoe as his attorney. After a two-day trial, the jury found Mancillas guilty of both counts.

On January 30, 2017, one day before Mancillas' sentencing, the district court received a letter from Mancillas, dated January 18, 2017. In the letter, Mancillas asked the court to continue the sentencing, stating that they, meaning Mancillas and Donahoe, "were not prepared to proceed." Mancillas noted that there were "viable defenses" that were not presented at trial, and that he needed more time to "have all available documented material of facts to be presented by my defense counsel at my sentencing hearing."

At the beginning of the sentencing, the district court asked Mancillas if he had adequate time to read through the Presentence Investigation Report (PSR) and go over it with Donahoe. Mancillas told the court he had not, and, referencing his letter, requested that the court continue the sentencing.

Mancillas sought to contest the PSR's suggested application of a four-level enhancement to his base offense level for possessing ammunition in connection with the state felony offense of criminal recklessness, pursuant to U.S.S.G. § 2K2.1(b)(6)(B). *See* Ind. Code § 35-42-2-2(b)(1)(A) (2014). Mancillas disputed that he fired a gun in the incident, and he explained that in order to contest the enhancement, he wished to submit tape recordings of three phone calls, as well as to call a case agent to testify. Donahoe also objected to the application

of this enhancement during the sentencing, but disagreed that playing the phone calls would assist in contesting the enhancement.

Mancillas then tied his request for a continuance to a request to proceed pro se:

> So I won't be able to—properly be able to defend myself today, and I've asked Mr. Donahoe to ask the Court to withdraw from the case. I feel he's ineffective. He has been ineffective throughout the whole trial. He refused to call witnesses on my behalf. So he didn't raise any viable issues.

Mancillas concluded by requesting that the court issue one final continuance in order to allow him "personally to be prepared for the sentencing hearing."

The court immediately decided Mancillas would not be allowed to proceed without Donahoe as counsel, stating, "In regards to relieving Mr. Donahoe of his representation, I am not going to do that, Mr. Mancillas." The court noted that Donahoe was Mancillas' third lawyer, and reiterated that Donahoe would not be allowed to withdraw.

The court then asked Donahoe to opine on Mancillas' request to continue the sentencing in order to play the phone calls, which resulted in a return to the issue of Mancillas' request to represent himself:

Donahoe:     I don't think [the phone calls] help
            his case at all, and that's not going to

> change. We could continue this for
> 30 days. It's still not going to change.
>
> So what he has expressed to me –
> and I don't know if he still has this
> position or not – is that he wants to
> represent himself so that he can go
> down that path and play those calls
> for the Court.

The Court: I think I've hopefully indicated that I will not relieve Mr. Donahoe of his responsibilities. We will continue with this sentencing hearing today.

All right.

Mancillas: So Your Honor, you're denying my request to proceed pro se?

The Court: I am.

Mancillas: And you're also denying the continuance?

The Court: I am.

As the court continued with the sentencing, the prosecutor interjected to clarify the grounds for denying Mancillas' requests to continue the sentencing and represent himself. The court noted that "in regards to the removal of Mr. Donahoe, this is Mr. Mancillas' third lawyer … . Mr. Donahoe's been here for the trial. I think it would take another attorney way too long to get up to speed, have to review transcripts and such as that."

The sentencing proceeded that day, and the court imposed a 100-month sentence.

## II.  DISCUSSION

### A.  Mancillas' Self-Representation Request

The Sixth Amendment implicitly entails a right to self-representation. *Faretta v. California*, 422 U.S. 806, 819 (1975). A defendant may proceed pro se as long as he can knowingly and intelligently waive his or her Sixth Amendment right to counsel. *United States v. Clark*, 774 F.3d 1108, 1112 (7th Cir. 2014).

In order to proceed pro se, a defendant must "clearly and unequivocally" raise the right to self-representation. *See Faretta*, 422 U.S. at 835. Courts have required an unequivocal assertion of the right to self-representation in order to prevent a defendant from using an ambiguous waiver of the right to counsel as a tool to overturn his or her conviction. *See United States v. Campbell*, 659 F.3d 607, 612 (7th Cir. 2011), *vacated on other grounds, sub. nom. Campbell v. United States*, 568 U.S. 802 (2012).

Moreover, a request to proceed pro se must be made in a timely fashion. *United States v. Oakey*, 853 F.2d 551, 553 (7th Cir. 1988). We have noted that "no case holds that an absolute right of self-representation exists after trial begins," *United States v. Kosmel*, 272 F.3d 501, 506 (7th Cir. 2001), and we have upheld the denial of requests to proceed pro se made in the middle of trial. *See Oakey*, 853 F.2d at 553–54 (finding no error in denial of "ambiguous" request to proceed pro se made prior to fourth day of trial).

However, we have also recognized that defendants can waive the right to counsel and proceed pro se post-trial and at sentencing. *See United States v. Harrington*, 814 F.3d 896, 900–01 (7th Cir. 2016) (finding a knowing and intelligent waiver of the right to counsel at sentencing).

Mancillas' initial letter to the district court did not constitute a clear and unequivocal request for self-representation. In fact, the letter was framed as a request for a continuance, and contemplated that a continuance was necessary in order for his lawyer to present certain arguments Mancillas believed were necessary to contest a sentencing enhancement.

However, on the day of sentencing, Mancillas unequivocally raised the issue of self-representation, and his statements clearly indicated that he wished to proceed pro se. Mancillas told the court that he had "asked Mr. Donahoe … to withdraw from the case," and that he needed a continuance in order to be "personally" prepared for the sentencing. Donahoe elaborated on Mancillas' statements and said that Mancillas "wants to represent himself so that he can go down that path and play those calls for the Court."

More importantly, the district court clearly understood Mancillas' statements as a request to proceed pro se: "In regards to relieving Mr. Donahoe of his representation, I am not going to do that, Mr. Mancillas." When Mancillas directly asked the court to confirm it was denying his "request to proceed pro se," the court did so, and then moved on with the sentencing.

All of these statements were more than sufficient to raise the issue of self-representation. At that point, the court should

have performed a formal colloquy to address Mancillas' request for self-representation. *See Faretta*, 422 U.S. at 834–35; *Clark*, 774 F.3d at 1112; *see also Campbell*, 659 F.3d at 612 (stating that an "unequivocal though conditional" request for self-representation in a letter was sufficient to trigger a colloquy). *Faretta* colloquies, as they are commonly called, are necessary to ensure that a defendant properly waives the right to counsel when the issue of self-representation is raised clearly and unequivocally. *Clark*, 774 F.3d at 1112.

We have stated that in these colloquies, courts "should explore whether the defendant realizes the difficulties he will encounter in acting as his own attorney and advise the defendant that proceeding *pro se* is unwise." *United States v. Todd*, 424 F.3d 525, 531 (7th Cir. 2005). As part of this formal and thorough inquiry, we have also stressed that courts should inquire as to the defendant's age and education, and inform him of the charges against him and the possible penalties a conviction might carry. *United States v. Belanger*, 936 F.2d 916, 918 (7th Cir. 1991). However, when the request is made post-trial, a defendant is "already well aware of the charges and their severity," thus lessening the need for such a searching inquiry. *See Harrington*, 814 F.3d at 900.

Rather than address Mancillas' request for self-representation, the court summarily denied it, only reminding Mancillas that Donahoe was his third attorney. When Donahoe, Mancillas, and the prosecutor returned to the issue of self-representation, the court again reaffirmed that it was denying the request without any inquiry into the matter.

Even at sentencing, where the complexities of trial and the difficult strategic choices are past, a court must respect the wishes of a defendant who unequivocally wishes to exercise his or her right to proceed pro se. This means undertaking a meaningful inquiry into a request for self-representation; summarily denying the request without any inquiry is error.

Since denial of the right to self-representation is not subject to the harmless error analysis, we must remand for resentencing. *See McKaskle v. Wiggins*, 465 U.S. 168, 177, n.8 (1984). On remand, the court should inquire as to whether Mancillas wishes to represent himself at resentencing. If he does, the court should conduct a formal *Faretta* colloquy. If Mancillas insists on representing himself, then he may proceed pro se and raise his arguments contesting the sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B). *See Harrington*, 814 F.3d at 901 (noting that "[u]nless the judge could convince [the defendant] to change his mind, the judge had no choice but to allow [the defendant] to proceed [at sentencing], as he had insisted, without counsel.").

### B. Mancillas' Base Offense Level and the Indiana Crime of Strangulation

Mancillas also contends that the Indiana crime of strangulation is not a "crime of violence" for purposes of the federal Sentencing Guidelines. Mancillas' criminal history included a 2007 Indiana state court conviction for strangulation. The PSR recommended a base offense level of 20, rather than 14 pursuant to U.S.S.G. § 2K2.1(a)(6), on the basis that his prior strangulation conviction qualified as a crime of violence. *See* U.S.S.G. § 2K2.1(a)(4)(A); § 2K2.1, cmt. n.1; § 4B1.2(a).

The district court adopted the PSR's recommended base offense level of 20; because Mancillas did not contest this before the district court, we review for plain error. *United States v. Tyson*, 863 F.3d 597, 599 (7th Cir. 2017). Under this standard, we will only reverse if (1) there was an error; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Molina-Martinez v. United States*, 136 S.Ct. 1338, 1343 (2016)).

U.S.S.G. § 4B1.2(a)(1), part of the career offender Sentencing Guidelines, defines a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—has as an element the use, attempted use, or threatened use of physical force against the person of another … ." This is commonly called the "elements clause." *See United States v. Campbell*, 865 F.3d 853, 855 (7th Cir. 2017). The Sentencing Guidelines also enumerate certain offenses as crimes of violence, but strangulation is not one of them. *See* § 4B1.2(a)(2).

The phrase "physical force" in the elements clause "means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

We apply the categorical approach in determining whether an offense is a crime of violence under the elements clause. *Campbell*, 865 F.3d at 855. Thus, we are to "look only to the statutory elements of the crime, without paying attention to the specific facts of the case." *Id.*

In 2007, when Mancillas committed the offense of strangulation, the Indiana statute for strangulation stated as follows:

> (b) A person who, in a rude, angry, or insolent manner, knowingly or intentionally:
>
>> (1) applies pressure to the throat or neck of another person; or
>>
>> (2) obstructs the nose or mouth of the another person;
>
> in a manner that impedes the normal breathing or the blood circulation of the other person commits strangulation, a Class D felony.

Ind. Code § 35-42-2-9 (2006).

Mancillas focuses on the second means of committing strangulation: by obstructing the nose or mouth of another. He points out that the words "force" and "bodily injury" are absent from the statute, and suggests that the mere obstruction of the nose or mouth can be accomplished in a non-violent manner. In support, Mancillas directs us to an unpublished Indiana Court of Appeals opinion which affirmed a strangulation conviction for a defendant who "held a blanket over [the victim's] face, smothering her and causing her to have difficulty breathing for about fifteen seconds." *Smith v. State*, No. 49A04-0712-CR-713, 2008 WL 2673231, *2 (Ind. Ct. App. July 9, 2008) (unpublished).

The Supreme Court in *Johnson* held that physical force means violent force that is only "*capable* of causing physical pain or injury." *Johnson*, 559 U.S. at 140 (emphasis added). *Johnson* did not hold that physical force requires "a level of

force likely to cause serious injury, or traumatic injury." *United States v. Duncan*, 833 F.3d 751, 756 (7th Cir. 2016). Rather, the physical force must only rise to a "degree of force necessary to inflict pain" which could be as minimal as a slap in the face. *Johnson*, 599 U.S. at 143; *see also Duncan*, 833 F.3d at 754 ("While mere touching is not enough to show physical force, the threshold is not a high one; a slap in the face will suffice.").

The Indiana strangulation statute explicitly contemplates a degree of violent force in the final element of the offense. A conviction for strangulation requires proof of applying pressure to the throat or neck, or obstructing the nose or mouth, "*in a manner that impedes the normal breathing or the blood circulation*." Ind. Code § 35-42-2-9 (2006) (emphasis added). Obstructing another's nose or mouth in a manner that impedes normal breathing or blood circulation—another way of describing suffocation—is certainly *capable* of causing pain or injury. *See* Ind. Code § 35-31.5-2-29 (defining "bodily injury" to include "physical pain").

Even the "smothering" of another's face with a blanket in *Smith* surely required the use of physical force, as defined in *Johnson*, to cause someone to have difficulty breathing. Unsurprisingly, other circuits that have dealt with nearly identical state statutes for strangulation have found that they require violent force capable of causing physical injury or pain. *See, e.g.*, *United States v. Parrow*, 844 F.3d 801, 803 (8th Cir. 2016) ("Knowingly strangulating another is categorically capable of causing physical pain or injury to another person because it requires proof that the victim's breathing or blood circulation was impaired by the defendant."); *United States v. Howell*, 838 F.3d 489, 502 (5th Cir. 2016) ("It is difficult to conceive of how

applying pressure to either a person's throat or neck in a manner that resulted in 'impeding the normal breathing or circulation' could not involve the use of physical force.").

Since Indiana's crime of strangulation "has as an element the use, attempted use, or threatened use of physical force against the person of another," it is a "crime of violence" for purposes of the Sentencing Guidelines, and the district court did not err in setting Mancillas' base offense level at 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A).

### III. CONCLUSION

For the foregoing reasons, we reject Mancillas' argument that Indiana's strangulation offense is not a crime of violence under the Sentencing Guidelines. The district court applied the correct base offense level under U.S.S.G. § 2K2.1(a)(4)(A). In light of the *Faretta* violation, however, we VACATE the sentence and REMAND for further proceedings consistent with this opinion.