In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3633

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALFRED L. CROSS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:17-cr-30047-NJR-1 — **Nancy J. Rosenstengel**, *Chief Judge.*

ARGUED SEPTEMBER 25, 2019 — DECIDED MAY 22, 2020

AMENDED ON DENIAL OF REHEARING AND
REHEARING EN BANC JUNE 18, 2020

Before RIPPLE, ROVNER, and BRENNAN, *Circuit Judges*.

ROVNER, *Circuit Judge.* Alfred L. Cross pled guilty to five
counts of bank fraud, in violation of 18 U.S.C. § 1344(1). Shortly
before sentencing, he moved *pro se* to terminate his counsel,

withdraw his guilty plea, and dismiss the case. The district court denied all three motions. He now appeals the court's denial of his motion to withdraw his plea, and we affirm.

I.

Between April of 2011 and March of 2015, Cross unlawfully obtained approximately $516,000 from several southern Illinois banks through a simple scheme. Cross opened bank accounts at out-of-state banks in the names of companies that he claimed to own. He also opened checking accounts at seven banks in southern Illinois, again in the names of companies he purportedly owned. Over the course of four years, he wrote large checks on the out-of-state accounts and deposited them in his accounts at the Illinois banks, knowing that there were insufficient funds in the out-of-state accounts to cover those checks. In each of the charged instances, he then withdrew from the Illinois banks all, or substantially all, of the money that he had purportedly deposited, taking the funds in the form of cashier's checks, cash withdrawals, checks and debit card purchases before any of the banks could discover that the large checks that he had deposited were not backed by sufficient funds in the out-of-state accounts.

Based on this conduct, he was charged with five counts of bank fraud in violation of 18 U.S.C. § 1344(1). Each count of the indictment alleged that Cross carried out his scheme to defraud the banks by depositing large checks written on the out-of-state accounts into banks in Illinois, knowing those checks were not covered by sufficient funds, and then withdrawing the funds before the banks could discover that the

deposited checks were not sufficiently funded. For example, Count I charged:

> On or about April 14, 2011, within the Southern District of Illinois, ALFRED L. CROSS, defendant herein, knowingly executed and attempted to execute his scheme to defraud by making a deposit into the "Al L. Cross - Consolidated Billing Account" at Washington Savings Bank using a check in the amount of $18,875, drawn on an account entitled "Alfred L. Cross - Cross/Hart/Page - Special Account" at County Bank in Fresno California, which check defendant knew to be NSF; In violation of Title 18, United States Code, Section 1344(1).

R. 36, at 3.[1] The other four counts varied only in the dates of the deposits, the amounts of the checks, the titles on the accounts, and the names of the banks involved in the scheme.

The court appointed counsel to represent Cross in March of 2017, shortly after he was charged. But Cross had difficulty with each of the three lawyers that the court ultimately appointed. After approximately eight months, the court allowed the first attorney to withdraw, and appointed a second on November 30, 2017. On March 16, 2018, while represented by the second attorney, Cross entered his guilty plea. Two months later, his relationship with the second lawyer deteriorated and the court allowed that attorney to withdraw as well, appointing a third counsel on May 24, 2018. Less than a week

---

[1] "NSF" is an acronym used in the banking industry. It stands for "non-sufficient funds.."

later, Cross filed a *pro se* motion to withdraw his guilty plea,
which the court promptly struck, advising Cross that the court
would entertain only those motions that had been filed by
counsel. Despite that warning, on December 6, 2018, a few
days before his scheduled sentencing hearing, Cross filed three
*pro se* motions styled, "An [sic] Motion To Withdraw Guilty
Plea," "Motion To Terminate Counsel," and "Motion To
Dismiss Case Per A, Mauro, Violation."[2]

Rather than striking these motions outright, the court
decided to take them up at the sentencing hearing that was
scheduled for just a few days later. The Court's order advised
counsel for both sides and the defendant himself to be pre-
pared to discuss the motions. At the hearing the court gave the
defendant, his counsel and the government opportunities to
address the motions.[3] The court denied the Motion to Termi-
nate Counsel on the merits and denied the Motion to Dismiss
because Cross had filed it *pro se* during a time that he was
represented by counsel. The court denied the Motion to
Withdraw Guilty Plea both on the merits and because Cross
had filed it *pro se* while represented by counsel. The court
resolved Cross's numerous objections to the PSR, considered

---

[2] "Mauro" is apparently a reference to *United States v. Mauro*, 436 U.S. 340
(1978), which is cited in the motion as the basis for dismissal.

[3] In his brief, Cross complains that the district court did not allow him to
argue his motions and cut him off when he attempted to speak. That is not
an accurate characterization of the hearing. Although the district judge
limited Cross's remarks, she did allow him to address his three motions.
That he failed to make productive use of the opportunity was his own
misstep, and the court was not obligated to allow him unlimited time.

the parties' respective arguments as to sentencing, heard Cross's allocution, and analyzed the statutory sentencing factors. The court then sentenced Cross to seventy-eight months' imprisonment and five years of supervised release. Cross appeals.

## II.

On appeal, Cross asserts that the district court erred when it denied his Motion to Withdraw Guilty Plea. We normally review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion, and we review any related factual findings for clear error. *United States v. Haslam*, 833 F.3d 840, 844 (7th Cir. 2016). When a defendant moves to withdraw a plea after the court has accepted the plea but before sentencing, the defendant may withdraw the plea if he or she "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). *See also Haslam*, 840 F.3d at 844. "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A plea may be found invalid under this standard where a defendant pleads guilty to a crime without having been informed of the crime's elements. *Bradshaw*, 545 U.S. at 183; *Henderson v. Morgan*, 426 U.S. 637, 645–47 (1976).

Cross asserts here that he was not properly informed of all of the elements of bank fraud. He argues that, in order to hold him liable for bank fraud under section 1344(1), the government was required to prove that the scheme to defraud

involved a material falsehood or omission, citing *Neder v. United States*, 527 U.S. 1 (1999). But there was no mention of a material falsehood or omission at his plea hearing, he asserts, and the government instead proved nothing more than the passing of bad checks, which he argues is not a federal offense. Because he was not informed of all of the elements of the crime to which he pled guilty and because the government presented no evidence of the element of a material falsehood or omission, he contends that his plea was not knowing and voluntary. He urges us to conclude that the district court therefore abused its discretion in denying his motion to withdraw his plea. He asks that we vacate the judgment and remand for further proceedings.

**A.**

As Cross himself concedes in his brief, "[t]here is a wrinkle in this case." Brief at 21. Aware that the court denied the Motion to Withdraw Guilty Plea both on the merits **and**, in the alternative, because it was filed *pro se*, Cross also advances an argument that the district court abused its discretion when it denied his Motion to Terminate Counsel. Specifically, he contends that he expressed in his Motion to Terminate Counsel an unequivocal request to proceed *pro se*. But the court instead misconstrued that motion as one to substitute counsel, he contends, and then failed to conduct the colloquy necessary to determine whether he could proceed *pro se*. Summarily denying his request to proceed *pro se* was an abuse of discretion, he asserts. He suggests that the district court therefore also abused its discretion when it denied his motion to withdraw his guilty plea on the alternate ground that it was filed *pro se*. He then appears to ask that this court address his appeal

of the denial of his motion to withdraw his guilty plea solely on the merits, under the abuse of discretion standard.[4]

Although it is unclear whether Cross seeks appellate relief from the denial of his Motion to Terminate Counsel, it is clear that he means to use the district court's purported error on that issue to set the standard for our review of the denial of the Motion to Withdraw Guilty Plea, his primary issue on appeal. Before considering the arguments relating to the Motion to Withdraw Guilty Plea, we think it best to clear away the underbrush of this secondary argument regarding the Motion to Terminate Counsel.

We begin with Cross's claim that the court erred when it misconstrued his Motion to Terminate Counsel as a motion to substitute counsel rather than as a request to proceed *pro se*. "In order to proceed *pro se*, a defendant must 'clearly and unequivocally' raise the right to self-representation." *United States v. Mancillas*, 880 F.3d 297, 301 (7th Cir. 2018) (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)). We require an unequivocal invocation of the right to proceed *pro se* in order "to prevent a defendant from using an ambiguous waiver of the right to counsel as a tool to overturn his or her conviction." *Mancillas*,

---

[4] We hedge our description of Cross's argument both because it is difficult to untangle the logic in this part of his opening brief and because he emphasizes in his reply brief that "he does not argue that the prosecutor's mischaracterization of his motion to terminate counsel entitles him to relief." Reply Brief at 1. Yet the argument in the opening brief seems to suggest that he is at least seeking relief for that alleged error by the court below by urging this court to alter the standard of review for the denial of his motion to withdraw his guilty plea.

880 F.3d at 301. *See also United States v. Campbell*, 659 F.3d 607, 612 (7th Cir. 2011), vacated on other grounds, sub. nom. *Campbell v. United States*, 568 U.S. 802 (2012) (describing the rationales for requiring that the demand to proceed *pro se* be unequivocal).

Cross's purported request to proceed *pro se* does not meet this standard. Cross relies heavily on the title of his motion, noting that it seeks to "terminate" counsel, and on a letter from his counsel that he attached to the motion.[5] But nowhere in the Motion to Terminate Counsel did Cross express a desire to represent himself should the court grant his request to terminate his third appointed lawyer. Instead, Cross asserted in the Motion that counsel was ineffective because he was insufficiently aware of the facts and law related to the charges against Cross. Cross also complained that counsel "inherited" the errors of the two lawyers who came before him, refused to file a motion to withdraw the guilty plea, and failed to correct claimed errors in the presentence report. R. 153. On the day of the hearing, when the court inquired whether Cross wished to "persist in the motions that [he] filed" the prior week, he responded affirmatively and then spoke for two pages of transcript without ever indicating that he wished to represent himself. In fact, at no point during the hearing did Cross

---

[5] The attached letter from Cross's third attorney explained the reasons that counsel would not comply with Cross's demand that he file a motion to withdraw the guilty plea. Counsel ends the letter by clearly stating that he will not file the motion, and advising Cross that, if he wants to file the motion, "you will need to ask the Court to let you represent yourself." The quoted portion of the letter is underlined by hand, presumably by Cross himself. R. 123, at 5.

mention that he wished to represent himself. Rather, he simply expressed dissatisfaction with his current and former attorneys. A defendant seeking to "terminate" counsel could be requesting to substitute new counsel, be seeking to proceed *pro se* entirely, or be requesting to present a particular motion *pro se* even though represented by counsel. *See United States v. Patterson*, 576 F.3d 431, 436 (7th Cir. 2009) (noting that whether a defendant may act as co-counsel along with his own attorney is a matter within the discretion of the district court).

Without any statement that Cross wished to represent himself, much less an unequivocal request to do so, the court reasonably interpreted Cross's motion as one to substitute counsel, which it appropriately denied after rejecting Cross's complaints about his third lawyer. In response to Cross's prior difficulties with his lawyers, the court had twice appointed new counsel, and it was reasonable to construe this ambiguous motion as asking for similar relief. In determining whether a court abuses its discretion in denying a motion to substitute counsel, a court considers, among other things, the timeliness of the motion, the adequacy of the court's inquiry into the defendant's motion, and whether the conflict was so great that it resulted in a total lack of communication preventing an adequate defense. *United States v. Best*, 426 F.3d 937, 947 (7th Cir. 2005). Here, the court found that counsel had competently represented Cross, and that counsel had appropriately filed objections to the PSR that the court would take up at the appropriate time. The court also noted that Cross appeared to be trying to simply delay the proceedings. Importantly, the court also found that there was no breakdown of communication between Cross and his lawyer that might justify substitu-

tion of counsel. Finding no abuse of discretion in the court's denial of the Motion to Terminate Counsel, we turn to the primary issue on appeal unencumbered by this side issue.

**B.**

The district court provided two reasons for denying the Motion to Withdraw Guilty Plea. First, it denied the motion on the merits, finding that Cross had knowingly and voluntarily pled guilty. Second, the court rejected the motion because it was filed *pro se* even though the defendant was represented by counsel. As noted above, we normally review the merits of a denial of the Motion to Withdraw the Guilty Plea for abuse of discretion. *Haslam*, 833 F.3d at 844. As we discuss below, however, review in this case is for plain error only. We review for abuse of discretion a district court's denial of a motion filed *pro se* by a defendant who is represented by counsel. *Patterson*, 576 F.3d at 436.

**1.**

A defendant does not have a right to represent himself when he is also represented by counsel. *Patterson*, 576 F.3d at 436. A court thus has "wide discretion to reject *pro se* submissions by defendants represented by counsel," and there was no abuse of discretion in the court's decision to reject Cross's motion on that basis here. A careful reading of the transcript reveals that the court had concluded that Cross was filing this motion for the purpose of delaying the proceedings, noting that he had filed his latest round of *pro se* motions just two business days before his sentencing hearing, after proceedings that had already been in progress for twenty-one months. The court also remarked that Cross had been represented by highly

competent lawyers including two lawyers whom the court characterized as among the best panel attorneys available in the district. That included the attorney who represented him at the time of sentencing, who had also refused to file a motion to withdraw the guilty plea, explaining in a letter that Cross attached to his Motion to Terminate Counsel the reasons for that refusal. The court was well within its discretion in denying the motion because it had been filed *pro se* when Cross was represented by highly competent counsel who had refused to file the very same motion for cogent reasons.

**2.**

We turn to the merits of the court's refusal to allow Cross to withdraw his guilty plea. Cross contended that he was not advised of one of the elements of bank fraud, namely, the requirement that the government prove a misrepresentation or omission of a material fact. He also contends that the government did not present evidence of this element and that he did not admit to conduct that would satisfy that element of the crime. He maintains that, because of these failures, his guilty plea was not knowing and voluntary, and the court should have allowed him to withdraw it on that basis. The government responds that section 1344(1) does not require that a scheme to defraud involve false statements or representations.[6]

---

[6] The government also argued that Cross's scheme resembles check kiting, and that check kiting is unlawful under section 1344(1) without additional proof of a material misrepresentation. We decline to consider this additional argument.

Cross urges us to review this issue under the abuse of discretion standard. The government agrees that the abuse of discretion standard applies, but "we are not bound to accept the government's concession when the point at issue is a question of law." *Krieger v. United States*, 842 F.3d 490, 499 (7th Cir. 2016). *Cf. Estrada-Martinez v. Lynch*, 809 F.3d 886, 894 (7th Cir. 2015) (whether the Board of Immigration Appeals applied the proper standard of review is a legal question that is reviewed *de novo*). The government based its concession entirely on the contents of Cross's *pro se* filings, and we have concluded that the district court did not abuse its discretion in ignoring those filings because Cross was represented by competent counsel. Because Cross "never properly requested that the district court vacate his guilty plea, we review for plain error." *Patterson*, 576 F.3d at 438. *See also Puckett v. United States*, 556 U.S. 129, 133-34 (2009) (finding that Rule 52(b)'s plain-error test applies to a forfeited claim that the government failed to meet its obligations under a plea agreement).

In order to reverse for plain error, we must find (1) error (2) that is plain, and (3) that affects the defendant's substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Stewart*, 902 F.3d 664, 675 (7th Cir. 2018). An error is plain if it is clear or obvious. *Olano*, 507 U.S. at 734; *Stewart*, 902 F.3d at 675. And an error affects the defendant's substantial rights when it is prejudicial, that is, when it has affected the outcome of the district court proceedings. *Olano*, 507 U.S. at 734; *Stewart*, 902 F.3d at 675. Finally, "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness,

integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 732 (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

We recently addressed the materiality prong of section 1344 in *United States v. LeBeau*, 949 F.3d 334 (7th Cir. 2020). The defendant there was also charged with bank fraud under section 1344(1), although for a very different scheme than the one at issue here. LeBeau obtained bank loans in part by submitting false financial statements that failed to disclose his significant debts. He also misrepresented to the bank the status of a building project in order to persuade the bank to delay foreclosing on the loan. At trial, the jury instructions failed to state that the government was required to prove that the "scheme involved a materially false or fraudulent pretense, representation, or promise …," as recommended in the Seventh Circuit Pattern Jury Instructions. The panel concluded that LeBeau waived the issue because he affirmatively approved the wording of the jury instructions.

But the panel also noted that the issue was a serious one:

> In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the Supreme Court held that "materiality of falsehood is an element of the federal … bank fraud statute[ ]." *Id*. at 25, 119 S.Ct. 1827. It did not limit that holding to section 1344(2). Rather, it determined that "fraud" itself requires the element of materiality. *Id*. at 23, 119 S.Ct. 1827. We have since said that *Neder* requires "district courts [to] include materiality in the jury instructions for section 1344."

> *United States v. Reynolds*, 189 F.3d 521, 525 n.2 (7th
> Cir. 1999).

*LeBeau*, 949 F.3d at 341. The commentary for the Pattern
Instruction for section 1344 provided additional guidance:

> Although the Seventh Circuit has not yet addressed
> the application of *Neder* to § 1344(1) specifically, the
> Ninth Circuit, in *United States v. Omer*, 395 F.3d 1087
> (9th Cir. 2005), held that materiality is an element of
> a § 1344(1) violation under *Neder*. In light of the
> general admonitions in *Neder* and *Reynolds*, this
> instruction has been modified to reflect this require-
> ment.

*LeBeau*, 949 F.3d at 341 (quoting Pattern Criminal Jury Instruc-
tions of the Seventh Circuit (2012 Ed.) (plus 2015–2017 and
2018 changes), http://www.ca7.uscourts.gov/
pattern-jury-instructions/7th_criminal_jury_instr.pdf, at 448).
We acknowledged that we have not always been consistent in
following this guidance but advised that "[t]he better course,
consistent with *Neder*, is to require the materiality instruction
on all bank-fraud charges, whether brought under section
1344(1) or (2)," until we receive greater clarity from the
Supreme Court on what is required. *LeBeau*, 949 F.3d at 341.

   *LeBeau* makes clear that our case law on this issue has not
always been consistent, and any error in failing to include the
element of material misrepresentation therefore was not clear
or obvious. As such, it does not meet the plain error standard.
The government assured the panel in *LeBeau* that its current
practice is to include the materiality element in all section 1344
cases, a prudent policy. Something must distinguish fraud

from theft, and the Supreme Court made clear in *Neder* that a materially false pretense fits the bill. *See also United States v. Freed*, 921 F.3d 716, 722 (7th Cir. 2019) (noting that a bank fraud conviction requires the government to prove, among other things, that the scheme involved a materially false or fraudulent pretense, representation, or promise).

As for Cross, we conclude by noting that there is some evidence in the record that at least part of his scheme involved material misrepresentations. *United States v. Arenal*, 500 F.3d 634, 638 (7th Cir. 2007) (a district court may consider not only the information proffered at the plea hearing, but also information contained in the PSR to establish a factual basis before entry of judgment and imposition of sentence). As the district court noted, banks normally place holds on large checks, refusing to make the deposited funds available until the originating banks confirm that there are sufficient funds to cover the deposited checks. R. 174, Sent. Tr. at 59–60. Some of the Illinois banks where Cross engaged in his scheme failed to follow their own rules on check holds, releasing funds to Cross without first ensuring that the deposits were valid. The district court noted that Cross "schmoozed" one bank employee and "scammed" others in order to convince them to bend the rules and release the funds. The court also remarked that Cross targeted the youngest and least experienced bank employees and then always had an excuse or story when the banks contacted him after the deposited checks failed to clear. An Illinois bank employee was fired as a result of falling for Cross's assurances. R. 174, Sent. Tr. at 59–60. On this record, we decline to find that any error on the material misrepresenta-

tion element seriously affected the fairness, integrity or public reputation of judicial proceedings. *Olano*, 507 U.S. at 732.

AFFIRMED.