NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 29, 2018
Decided July 20, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-2619

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v*. | |
| | No. 16 CR 838-1 |
| PEDRO ORTEGA-CERVANTES, | |
| a.k.a. "Pedro Ortega-Bey" | Sharon Johnson Coleman, |
| *Defendant-Appellant*. | *Judge*. |

## O R D E R

Pedro Ortega-Cervantes, to whom we refer as "Ortega-Bey" as he now prefers, was removed from the United States in 2005 after his lawful permanent resident status was revoked as a result of his conviction for a drug crime. He returned to the United States, however, and was arrested in Cook County in 2014. He was then indicted for unlawfully reentering the country without applying for readmission, 8 U.S.C. § 1326(a). His case proceeded to a bench trial, at which he defended himself on the ground that his removal had been invalid because he is a member of Moorish Science Temple of America.

Ortega-Bey insisted on representing himself at his arraignment and beyond so that he could argue that, as a Moor, he was an original inhabitant of the land and could not be deported or prosecuted by the United States government. Over Ortega-Bey's objection, Judge Coleman appointed standby counsel. At the bench trial, the government presented several witnesses. Ortega-Bey cross-examined the first two, as did standby counsel. The government then objected to the hybrid representation. From then on, the judge asked Ortega-Bey if he wished to have standby counsel perform the cross-examinations; he said yes for the remaining four witnesses. Ortega-Bey did not testify, nor did he present any evidence. The judge ultimately found that the government had met its burden to show that Ortega-Bey was guilty of illegal reentry. The sentencing range recommended by the Guidelines was 33 to 41 months; the judge chose a sentence of 28 months' imprisonment and 3 years' supervised release with very few conditions. Ortega-Bey appealed.

Appellate counsel moves to withdraw on the ground that the appeal is frivolous. See *Anders v. California*, 386 U.S. 738 (1967). Ortega-Bey did not respond to counsel's motion. See Cir. R. 51(b). Counsel's brief explains the nature of the case and addresses issues that an appeal of this kind might be expected to involve. Because the analysis in the brief appears thorough, we limit our review to the subjects that counsel discusses. See *United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014); *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996).

First, counsel contemplates whether he could argue that Ortega-Bey did not knowingly waive his right to counsel. But Ortega-Bey stated his intent to proceed pro se at his arraignment, detention hearing, pre-trial hearing, and when standby counsel was appointed. Magistrate Judge Finnegan and Judge Coleman repeatedly informed him of his right to counsel and the hazards of proceeding pro se. Given the judges' formal inquiry into Ortega-Bey's desire, ability, and capacity to proceed without counsel and his knowledge of his rights, we agree with the assessment that appealing on this issue would be frivolous. See *United States v. Harrington*, 814 F.3d 896, 899 (7th Cir. 2016).

Counsel also assessed whether Ortega-Bey could argue that standby counsel's participation violated his constitutional right to self-representation, but we agree with counsel's conclusion that any such challenge would be meritless. Despite the frustrations with standby counsel that Ortega-Bey expressed at sentencing ("I never accepted him"), the court was entitled to appoint him over the defendant's objections. *Faretta v. California*, 422 U.S. 806, 835 n. 46 (1975). And a defendant's right to self-representation is not violated unless standby counsel impinges upon the defendant's

ability to present his own defense. *McKasle v. Wiggins*, 465 U.S. 168, 177, 179 (1984). Ortega-Bey explicitly consented to almost all of standby counsel's participation, except counsel's follow-up cross-examination of the first two witnesses, to which he lodged no objection. But standby counsel did not interfere with Ortega-Bey's strategy. Counsel merely asked some more questions, which did not conflict with or undermine Ortega-Bey's theory of defense. It would be frivolous to argue that his rights were violated.

Next, counsel explores whether he could argue that Ortega-Bey's conviction was based on insufficient evidence. But counsel concludes that after viewing the evidence in the light most favorable to the government, the evidence supports the verdict. *United States v. Doody*, 600 F.3d 752, 754 (7th Cir. 2010). We agree with counsel's assessment. The government proved with testimony and documentation from immigration officials the three elements of illegal reentry for purposes of 8 U.S.C. § 1326: that Ortega-Bey was a noncitizen who had been removed; he later had reentered the United States; and his reentry was without the consent of the Attorney General. The judge found persuasive the recording from an immigration-court hearing in 2005, at which Ortega-Bey (then Ortega-Cervantes) admitted to being from Mexico and was ordered removed. And an expert was able to match fingerprints in "Ortega-Cervantes's" immigration file with Ortega-Bey's. Further, an officer from the United States Citizenship and Immigration Service testified that a thorough search of the record did not reveal that Ortega-Bey sought permission to reenter the country. We find no error in the judge's conclusion that the inculpatory evidence overcame certain discrepancies in the record, including that the number on Ortega-Bey's immigration file differed by one digit from the one on the removal order for Pedro Ortega-Cervantes (the government attributed this to a typographical error).

Counsel next considers potential appellate arguments based on Ortega-Bey's sentencing and concludes that any argument would be frivolous. Counsel first notes that at the sentencing hearing, the judge was unable to verify that Ortega-Bey read the PSR, see Fed. R. Crim. P. 32(i)(1)(A), because he refused to review it on the basis that it did not "apply" to him. Still the judge did the best that she could to protect Ortega-Bey's interests by asking standby counsel to respond to the PSR.

We agree with counsel that any argument about procedural error at sentencing would be frivolous, because the judge calculated the Guidelines range correctly and thoroughly discussed the justification for the sentence imposed. The base offense level was properly set at 8, see U.S.S.G. § 2L1.2(a), and the district court correctly applied a 10-level upward adjustment because Ortega-Bey was ordered removed from the United

States after receiving a sentence of more than five years for a felony conviction. *Id.* § 2L1.2(b)(2)(A). And like counsel, we see no error in the district judge's determination that Ortega-Bey had four criminal history points and therefore a criminal history category of III, yielding a Guidelines sentencing range of 33 to 41 months. U.S.S.G. Ch. 5, Pt. A.

We also agree with counsel that the judge followed the other procedural requirements pertinent to sentencing. Judge Coleman discussed the factors listed in 18 U.S.C. § 3553(a), including the need for specific and general deterrence. The judge also addressed the primary argument in mitigation: Ortega-Bey's sincerely held belief that his Moorish identity shielded him from prosecution and deportation. She imposed a 28-month prison sentence with three years of supervised release and only a few supervised-release conditions because of the likelihood that Ortega-Bey would be deported. We agree with counsel that the judge gave an adequate statement of reasons consistent with § 3553(a). *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008).

Counsel then considers but rejects the possible argument that Ortega-Bey's sentence was substantively unreasonable. We presume that a sentence like Ortega-Bey's that is below the Guidelines range is reasonable, see *United States v. Miller*, 834 F.3d 737, 744 (7th Cir. 2016), and counsel identifies nothing in the record that could overcome that presumption

Counsel does point to one flaw in the sentencing process that must be corrected: the written judgment contains one discretionary condition of supervised release that the judge did not orally pronounce at sentencing. Since there is a non-frivolous appellate argument available to Ortega-Cervantes, we must deny counsel's motion to withdraw. See *Anders*, 386 U.S. at 744. We see no need for additional briefing on Ortega-Bey's behalf, however, because counsel's brief thoroughly discusses the issue. The problem can be remedied by the district court as a clerical correction. As counsel explains, Special Condition Number 21 (that Ortega-Bey must be surrendered to the immigration authorities after serving his sentence and that he may not return to the United States without prior approval of the Attorney General) is listed on the judgment but was not announced at sentencing. That is error, and so the term must be stricken. *United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2005) (citing *United States v. Bonanno*, 146 F.3d 502, 511 (7th Cir. 1998)).

For that reason we DENY counsel's motion to withdraw. We AFFIRM the judgment of the district court with the exception of the single supervised release

condition discussed above, which requires a limited REMAND so that the district court may enter a corrected judgment.